## HAAS *v.* HENKEL, UNITED STATES MARSHAL.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 367.    Argued January 6, 7, 1910.—Decided February 21, 1910.

Notwithstanding the hardship necessarily entailed upon the accused in being tried in a district other than that in which he resides, there is no principle of constitutional law that entitles him to be tried in the place of his residence.

Art. III, § 2 of, and the Sixth Amendment to, the Constitution secure to the accused the right to a trial in the district where the crime is committed, and one committing a crime in a district where he does not reside cannot object to his removal thereto for trial.

Where one has been indicted for the same offense in two or more districts, in one of which he resides, it is the duty of the prosecuting officer to bring the case to trial in the district to which the facts most strongly point; and if the court first obtaining jurisdiction of the person of the accused does not object, the accused cannot object

to his being removed under § 1014, Rev. Stat., from the district of his residence to the district in which the government elects to first bring the case to trial.

Where the statute is plain, and Congress has made no exception in its application, the court cannot make one.

Under § 1014, Rev. Stat., the duty of the commissioner is to determine whether a *prima facie* case is made out that a crime has been committed, indictable and triable in the district to which removal is sought, and if so determined there is no discretion; nor is the fact that the accused is under bail in the district where he resides a bar to the removal.

A conspiracy to defraud the United States under § 5440, Rev. Stat., does not necessarily involve a direct pecuniary loss to the United States. The statute includes any conspiracy to impair, obstruct or defeat the lawful function of any department of the Government, e. g., the promulgation of officially acquired information in regard to the cotton crop.

Regulations of a department of the Government promulgated under § 161, Rev. Stat., have the force of law; and bribery of an officer of the United States to violate such regulations is included under § 5451, Rev. Stat., making it a crime to bribe such officer to violate his lawful duty.

Matters exclusively relating to defense either substantive or in abatement are properly determinative by the court into which the indictments are returned, and where the case will be tried; they cannot be considered on an appeal from the order of removal made under § 1014, Rev. Stat.

Introduction before the commissioner of an indictment found in the district to which removal is sought makes a *prima facie* case for removal which is not overcome by an indictment found in another district, although the *locus* is differently stated in each indictment.

167 Fed. Rep. 211, affirmed.

THE facts are stated in the opinion.

*Mr. Nash Rockwood*, with whom *Mr. Max Steuer* was on the brief, for appellant:

The New York indictments are still pending; they have not been *nolle prossed* or quashed; they do not charge that the crime was committed in one district and completed in another; or, in the District of Columbia and completed in New York;

but each alleges that the completed acts of conspiracy took place within their respective jurisdictions.

The conspiracy itself is the gist of the offense, and when the Government charged the commission of the offense in New York it elected its forum and the defendant is, constitutionally, entitled to be there tried.

It has become quite the habit of late in criminal prosecutions for the Government to seek the trial in the District of Columbia, presumably because the defendants are taken to a foreign jurisdiction where they are unknown and subjected to enormous expense. This oppressive use of the criminal statutes invades the constitutional right of a citizen to a speedy trial in the district of his residence, provided, as in this case, the crime of which he stands accused was there committed.

There is no reason why he should not, and every reason—both constitutional and statutory—why he should be tried in New York. See *Tinsley* v. *Treat*, 205 U. S. 20; *United States* v. *Marx*, 122 Fed. Rep. 964; *United States* v. *Sauer*, 88 Fed. Rep. 249.

The accused should not be removed if the court to which he is to be removed has no jurisdiction, and in this case the courts of the District of Columbia have no jurisdiction as the Government alleges and has charged the same offense to have been committed and completed in New York. *Nashville &c.* v. *Alabama*, 128 U. S. 96; *In re Palliser*, 136 U. S. 257; *Horner* v. *United States*, 143 U. S. 207; *Hyde* v. *Shine*, 199 U. S. 62; *Georgia* v. *Bolton*, 11 Fed. Rep. 217; *United States* v. *Hackett*, 29 Fed. Rep. 848; *In re Rosdeitscher*, 33 Fed. Rep. 657; *Ex parte Pritchard*, 43 Fed. Rep. 915; *In re Kelley*, 46 Fed. Rep. 654; *In re King*, 51 Fed. Rep. 434; *United States* v. *Fowkes*, 53 Fed. Rep. 13; *United States* v. *Howell*, 56 Fed. Rep. 21; *United States* v. *Peterson*, 64 Fed. Rep. 145; *In re Huntington*, 68 Fed. Rep. 881; *Ex parte Ballinger*, 88 Fed. Rep. 781; *United States* v. *Murphy*, 91 Fed. Rep. 120; *In re Belknap*, 96 Fed. Rep. 614; *United States* v. *Alberty*, 24 Fed. Cas. 765; *United States* v. *Bickford*, 24 Fed. Cas. 1144; *United States* v. *Bird*, 24

Fed. Cas. 1148; *United States* v. *Britton*, 24 Fed. Cas. 1239; *United States* v. *Jackalow*, 1 Black, 484.

The indictments did not confer jurisdiction upon the commissioner to commit the defendant for removal, and there was an entire absence of probable cause as the indictments do not allege an illegal conspiracy to commit any offense against the United States.

Only crimes and offenses specifically enumerated by statute are indictable. *United States* v. *Cook*, 17 Wall. 168–174. When the crime charged is conspiracy to do a criminal act, it must be shown that the act which is the purpose and object of the conspiracy is itself a violation of law. *Conrad* v. *United States*, 127 Fed. Rep. 798; *United States* v. *Boyer*, 85 Fed. Rep. 425; Rev. Stat., § 5440. Charging conspiracy to violate § 5451 must charge an intent to accomplish certain acts which when performed would violate § 5451.

There was no bribery as defined in § 5451 in this case. A conditional offer and promise based upon the success of a future event, where speculation was not successful and the promisee receives nothing is not a violation of § 5451. *United States* v. *Greene*, 136 Fed. Rep. 651; *United States* v. *Crafton*, 25 Fed. Cas. 681; *United States* v. *Kessell*, 62 Fed. Rep. 57.

A conspiracy to do a lawful act is not an illegal conspiracy under § 5440. The conspiracy must be to commit an offense, punishable by statute. *Goldfield Mines Company* v. *Miners' Union*, 159 Fed. Rep. 500; *United States* v. *Johnson*, 26 Fed. Rep. 682; *United States* v. *Lancaster*, 44 Fed. Rep. 896; *United States* v. *Benson*, 70 Fed. Rep. 594; *Drake* v. *Stewart*, 76 Fed. Rep. 142. The intent to violate the law is the gravamen of the offense, and must be distinctly averred. *United States* v. *Cruikshank*, 92 U. S. 558; *United States* v. *Carll*, 105 U. S. 612; *Bannon & Mulkey* v. *United States*, 156 U. S. 466; *United States* v. *Jackson*, 25 Fed. Rep. 548; *United States* v. *Van Lueven*, 62 Fed. Rep. 69; *McCarty* v. *United States*, 101 Fed. Rep. 113; *United States* v. *Post*, 113 Fed. Rep. 854; *United States* v. *Greene*, 136 Fed. Rep. 658; *United States* v. *Hess*, 124

U. S. 483, 486; *Pettibone* v. *United States,* 148 U. S. 202; *United States* v. *Fox,* 95 U. S. 670; *People* v. *Lohman,* 2 Barb. (N. Y.) 218.

The indictments do not allege an illegal conspiracy "to defraud the United States in any manner or for any purpose." *Curley* v. *United States,* 130 Fed. Rep. 1; *United States* v. *Morse,* 161 Fed. Rep. 429; *Hyde* v. *Shine,* 199 U. S. 62; *United States* v. *Keitel,* 211 U. S. 370, can be distinguished, as there the government policy was interfered with and acts were performed directly contravening the spirit and letter of the statutes. To be a crime to deprive the United States of a right or an official function, the right must be one defined by law and the official function one imposed by law. See new Federal Penal Code, §§ 123 and 124.

No case has yet applied the statute unless the acts complained of constituted the deprivation of a right or duty imposed upon a department of the Government by statute, or that the acts operated to deprive the Government of property or the right of property. *United States* v. *Cruikshank,* 92 U. S. 542; *United States* v. *Simmons,* 96 U. S. 360; *United States* v. *Hirsch,* 100 U. S. 35; *Dealy* v. *United States,* 152 U. S. 539; *France* v. *United States,* 164 U. S. 676; *Re Wolf,* 26 Fed. Rep. 611; *United States* v. *Reichert,* 32 Fed. Rep. 142; *United States* v. *Millner,* 36 Fed. Rep. 891; *United States* v. *Purchel,* 116 Fed. Rep. 142; *United States* v. *Thomas,* 145 Fed. Rep. 79; *United States* v. *Taffe,* 186 Fed. Rep. 113.

Penal laws must be strictly construed and if there is any doubt concerning the application of a criminal statute, it must be resolved in favor of the defendant. *Williamson* v. *United States,* 207 U. S. 425; *Hamilton* v. *United States,* 26 App. D. C. 382.

The indictments do not aver an illegal conspiracy to defraud the United States in the matter of making the reports untrue and inaccurate.

It is not a crime or offense to violate a custom, practice or regulation of the head of a department of the Government

unless such custom, practice or regulation has been authorized by statute. and its violation made penal by some general or special law. . A charge of crime could not be predicated upon the violation of a rule to keep information regarding the cotton crop secret as there is no statute authorizing the Secretary to make such a rule, nor any statute making its violation a criminal offense. There are no common law offenses against the United States. *United States* v. *Eaton*, 144 U. S. 677. While by Rev. Stat., § 161, the head of a department may prescribe regulations not inconsistent with law for the government of his department, it is likewise true that in order to constitute any act or set of acts, an offense, the act must be made criminal by statute. *United States* v. *Sandefuhr*, 145 Fed. Rep. 49; *Morrill* v. *Jones*, 106 U. S. 466; *United States* v. *Boyer*, 85 Fed. Rep. 425; *Wilkins* v. *United States*, 96 Fed. Rep. 837; *United States* v. *Maid*, 116 Fed. Rep. 650; *United States* v. *Blasingame*, 116 Fed. Rep. 654; *United States* v. *Matthews*, 146 Fed. Rep. 306. See also *Caha* v. *United States*, 152 U. S. 211; *Williamson* v. *United States*, 207 U. S. 425.

The violation of a custom cannot be made the basis of a criminal prosecution in the absence of any statute imposing any duty.

None of the counts allege that the defendants knew, or had reason to know, of any alleged custom, practice, regulation or rule of secrecy in the department; and knowledge not being alleged, and there being no presumption of knowledge, they cannot be held liable for criminal wrong-doing. *Ignorantia facti excusat, ignorantia juris non excusat.* *Pettibone* v. *United States*, 148 U. S. 197; *Wilkins* v. *United States*, 96 Fed. Rep. 837. Regulations to have the force of law must be made by an executive department in pursuance of authority delegated by Congress and only when so promulgated, will the courts take judicial notice of their existence. The existence of such rule is a fact and must be pleaded and proven as any other fact. *United States* v. *Matthews*, 146 Fed. Rep. 306.

Holmes was not an officer of the United States nor a person

acting for or on behalf of the United States in an official function under or by virtue of any department or office of the Government thereof.    Nothing was pending in connection with the cotton crop reports, which could by law be brought before him in an official capacity, or upon which his decision or action could be influenced.    He was not charged with any duty whatever in connection with reports upon the cotton crop.    As to who is an officer of the United States, see *United States* v. *Germaine,* 99 U. S. 508; *United States* v. *Smith,* 124 U. S. 525; *Auffmordt* v. *Hedden,* 137 U. S. 310; *United States* v. *McDonald,* 72 Fed. Rep. 295; *United States* v. *Cole,* 130 Fed. Rep. 614; *United States* v. *McCrory,* 91 Fed. Rep. 295; *United States* v. *Schlierholz,* 137 Fed. Rep. 616; *United States* v. *Gibson,* 47 Fed. Rep. 833; *United States* v. *Haas,* 167 Fed. Rep. 211; *United States* v. *Ingham,* 97 Fed. Rep. 935.

The words "official function," as used in § 5451, mean a duty imposed by law, and a charge of crime cannot be predicated upon an act not made an official function, obligation or duty by express command of law.    If Holmes was a public officer, the indictments are defective, because he could not conspire with himself to bribe, influence, or induce himself to commit the alleged offense of misconduct.    *United States* v. *Dietrich,* 126 Fed. Rep. 664.    See also 2 McClain's Cr. L., § 959; *Shannon* v. *Commonwealth,* 14 Pa. St. 226; *Miles* v. *Butler,* 8 Washington, 194; *S. C.,* 35 Pac. Rep. 1093; *S. C.,* 25 L. R. A. 434; *S. C.,* 40 Am. St. Rep. 900; 2 Wharton's Cr. Law, § 1339; *Chadwick* v. *United States,* 141 Fed. Rep. 225; *United States* v. *New York Central & Hudson River Railroad Company,* 146 Fed. Rep. 298.

There was no proof of the issuance of bench warrants or that defendants were wanted within the District of Columbia. Removal proceedings must be based upon the fact that the accused is wanted in the demanding jurisdiction and the absence of such proof is a jurisdictional defect.

The history of the act and adjudicated cases show that it was the intention of Congress in this provision to assimilate all the proceedings for holding accused persons to

answer before a court of the United States to the proceedings provided for similar purposes by the laws of the State where the proceedings should take place. *United States* v. *Martin,* 17 Fed. Rep. 150; *United States* v. *Tureaud,* 20 Fed. Rep. 621; *Marvin* v. *United States,* 44 Fed. Rep. 405; *Re Gourdin,* 45 Fed. Rep. 842; *United States* v. *Sauer,* 73 Fed. Rep. 671; *United States* v. *Sapinkow,* 90 Fed. Rep. 654; *United States* v. *Rundlett,* 2 Curtis (U. S.), 41; *United States* v. *Horton,* 2 Dill. (U. S.) 94; *Ex parte Burford,* 3 Cranch, 448; *United States* v. *Burr,* 2 Whel. Crim. (N. Y.) 573; *United States* v. *Insley,* 54 Fed. Rep. 223; *Re Dana,* 68 Fed. Rep. 895; *United States* v. *Collins,* 79 Fed. Rep. 65; *Re Price,* 83 Fed. Rep. 830; *United States* v. *Price,* 84 Fed. Rep. 636; *Johnson* v. *United States,* 87 Fed. Rep. 187; *People* v. *Cramer,* 22 App. Div. 396; *Comfort* v. *Fulton,* 13 Abb. Pr. 276; *Blodgett* v. *Race,* 18 Hun, 132; *Tracy* v. *Seamens,* 7 N. Y. 146.

The law of New York requires the issuance of a bench warrant for the arrest of one indicted, and also for the arrest of one sought to be extradited to another jurisdiction.

The crimes and offenses were all barred by the statute of limitations. If any conspiracy existed at all with relation to the report of June, 1905, it was entered into in 1904, so that the acts of May 31, 1905, now alleged in the indictments as separate conspiracies, were mere overt acts of the original conspiracy, and the statute of limitations became a bar in August, 1907. The indictments were found in May, 1908. *Re Snow,* 120 U. S. 282, and see *United States* v. *Kessel and American Sugar Refining Company* (not yet reported).

A conspiracy formed under § 5440, Rev. Stat., is a completed crime when an overt act has been committed to effect the object of the conspiracy. *United States* v. *Irvine,* 98 U. S. 450; *Pettibone* v. *United States,* 148 U. S. 97; *Dealy* v. *United States,* 152 U. S. 539; *United States* v. *Owen,* 32 Fed. Rep. 534; *United States* v. *Lancaster,* 44 Fed. Rep. 896; *United States* v. *McCord,* 72 Fed. Rep. 159; *Berkowitz* v. *United States,* 93 Fed. Rep. 452; *United States* v. *Greene,* 100 Fed. Rep. 941; *United*

*States* v. *Biggs*, 157 Fed. Rep. 264; *United States* v. *Black*, 160 Fed. Rep. 431.

If the conspiracy is the offense and it becomes complete upon the performance of the first overt act and the defendants are then at that time subject to indictment, the bar of the statute must apply after three years from the commission of that overt act. To hold otherwise is to read into § 5440 elements as to the renewal or continuance of a conspiracy which are not therein expressed. *Ware* v. *United States*, 154 Fed. Rep. 577; *United States* v. *Lonabough*, 158 Fed. Rep. 314; *Armour Packing Company* v. *United States*, 209 U. S. 56. The general Statute of Limitations, Rev. Stat., § 1044, is applicable to the District of Columbia. *United States* v. *Callan*, 197 U. S. 477.

The alleged crime of conspiracy to bribe merged in the completed offense.

The overt act is made applicable to both counts of the indictment so that the conspiracy to bribe merged in the specific offense of bribery at the time the money was paid to Holmes. *United States* v. *Biggs*, 157 Fed. Rep. 264; *United States* v. *Black*, 160 Fed. Rep. 431; *Berkowitz* v. *United States*, 93 Fed. Rep. 452; *United States* v. *Jones*, 5 Utah, 552; 1 Bishop's Crim. Law, N. Cr. Law, § 787; 1 Whart. Cr. L. 27a; *United States* v. *Melfi*, 118 Fed. Rep. 900; 6 Am. & Eng. Ency. of Law, 863. See also *Thomas* v. *United States*, 156 Fed. Rep. 902; *Clune* v. *United States*, 159 U. S. 590–595; *United States* v. *Gardner*, 42 Fed. Rep. 829; *United States* v. *McDonald*, 3 Dill. 545; *United States* v. *Martin*, 4 Cliff. 166; *State* v. *Murphy*, 6 Alabama, 765; *Elsey* v. *State*, 47 Arkansas, 572; *Wright* v. *State*, 5 Indiana, 528; *State* v. *Lewis*, 48 Iowa, 579; *State* v. *Mayberry*, 48 Maine, 238; *Commonwealth* v. *Kingsbury*, 5 Massachusetts, 106; *People* v. *Richards*, 1 Michigan, 222; *People* v. *McKane*, 31 Abb. N. C. 176; 7 Misc. Rep. (N. Y.) 478; *People* v. *Mather*, 4 Wend. (N. Y.) 229; *S. C.*, 21 Am. Dec. 122.

*Mr. Jesse C. Adkins*, Special Assistant to the Attorney Gen-

eral, with whom *Mr. Assistant Attorney General Fowler* was on
the brief, for appellee.

MR. JUSTICE LURTON delivered the opinion of the court.

On May 29, 1908, four indictments were found in the
Supreme Court of the District of Columbia against Moses
Haas, and certain others, charging them with having con-
spired in the District of Columbia to defraud the United
States, and with having conspired to commit an offense
against the United States, under § 5440, Rev. Stat. Bench
warrants were issued and returned not found.

On the same day four other indictments were found in the
Circuit Court of the United States for the Southern District
of New York against the same Moses Haas and the others
named in the District of Columbia indictments, charging
them with having conspired in the Southern District of New
York to commit the same offenses covered by the four Dis-
trict of Columbia indictments. Haas appeared in the New
York courts and gave bail. Later he was arraigned and
pleaded not guilty, then withdrew his plea and entered a
motion to quash, which was overruled.

On June 24, 1908, and while this motion to quash was *sub
judice,* proceedings were duly begun by the United States
district attorney for the Southern District of New York
before the United States commissioner for the arrest of Haas
and his removal to the District of Columbia for trial upon
the indictments there pending against him. Pending these
removal proceedings, and before any hearing, the United
States district attorney moved the Circuit Court in which the
New York indictments were pending for consent to the pros-
ecution of these removal proceedings, and consent was granted
over the objection of Haas. This application was made by
direction of the then Attorney General of the United States,
who, in an official communication, said "that should the trial
here [Washington] result in acquittal or conviction, the
indictments in New York will be dropped." Among other

reasons for desiring the trial in Washington, aside from mere questions of convenience to Government officials and witnesses, the Attorney General said:

"1. The indictments charge a conspiracy on the part of the several defendants to cause to be issued at Washington by the Bureau of Statistics for the Department of Agriculture of false cotton crop reports, and that Holmes, who was then Associate Statistician of the Bureau of Statistics, was to furnish to his co-conspirators in advance of their official issue the information to be contained in the reports. While, owing to the commission in your district of acts in pursuance of the conspiracy, the court in your district has jurisdiction of the offense, yet the conspiracy was in all probability actually formed in Washington. The false reports were prepared and issued here and the advance information was given out here. The real situs of the crime then is in the District of Columbia, and the trials should therefore be had here.

"2. The defendant Holmes has been arrested and is now awaiting trial on the indictments pending in the District of Columbia. There are two series of these indictments, one against Price, Haas and Holmes, and the other against Haas, Peckham and Holmes. It would be a great convenience and a vast saving to the Government to try the defendants together. Even this would necessitate two trials, one in each series. If the non-resident defendants are not removed to Washington, four trials would be needed, two in Washington and two in New York."

Upon the hearing before the commissioner the Government put in evidence certified copies of the four District of Columbia indictments, and proof that bench warrants had issued in that district and been returned not found. The defendant admitted his identity and put in evidence copies of the four New York indictments and of the proceedings had thereunder. The commissioner found probable cause and directed that Haas be held to await an order of removal by a district judge. Thereupon a petition for writs of *habeas corpus* and

certiorari were filed in the Circuit Court, averring that his arrest and detention was illegal and in violation of the Federal Constitution. The Circuit Court upon a full hearing denied the writs and remanded the petitioner. 166 Fed. Rep. 621. This appeal was thereupon taken.

The facts stated present the question as to whether Haas could be lawfully removed under § 1014, Rev. Stat., over his objection, pending the proceedings against him in the Southern District of New York for similar offenses.

Section 1014 provides for the arrest and detention of any person, wherever found, "for trial" before such court of the United States as by law has cognizance of the offense, and that "where any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had."

Haas was arrested upon a warrant duly sworn out, charging him with offenses against the United States, committed within the District of Columbia. Copies of the indictments duly returned by a grand jury were put in evidence. That made a *prima facie* case, requiring detention until an order of removal could be applied for and issued. Haas insisted upon his right to be tried in the district of his residence, and complained, with more or less justice, of the expense and hardship incident to a trial in the District of Columbia. But there is no principle of constitutional law which entitles one to be tried in the place of his residence. The right secured by Art. III, § 2 of, and the Sixth Amendment to, the Constitution is the right of trial in the district "where the crime shall have been committed." If, therefore, Haas committed a crime against the United States in the District of Columbia he had neither legal nor constitutional right to object to removal to the district where the trial was to be had. *In re Palliser,* 136 U. S. 257, 265.

If the only constitutional right secured is the right to a trial by jury in the district where the crime was committed, there is obviously no invasion of either right by the election of the Government to prosecute the offense in any district and "court of the United States as by law has cognizance of the offense." If the same accusation has been made by grand juries of different jurisdictions, it would be manifestly the duty of the prosecuting officer of the United States to determine in which the offense was most probably committed and bring the offender to trial there. Thus, if the place of the formation of the conspiracy be doubtful, and there be some facts pointing to one district and some to another, and indictments have been returned in each, it would be the plain duty of the prosecution to take steps to bring the case to trial in that district to which the facts most strongly pointed. This seems to have been the very situation of this case, and the principal motive moving the Attorney General to give the instruction shown by his letter to the district attorney for the Southern District of New York. The removal statute is plain and leaves no room for the court to make an exception, when Congress has made none.

Has the United States court for the District of Columbia jurisdiction over the accusation made in that District and is the case triable there? If so, the duty of the commissioner, assuming a showing of probable cause, was to detain and of the judge of the district to issue his warrant for the removal of the accused "to the district where the trial is to be had." The case, on principle, must be the same if the offense be one which was committed in more than one district. In such a case § 731, Rev. Stat., makes it cognizable in either. But, if indicted in two or more districts, there must be an election as to where the defendant shall be tried. Primarily, this is the right and duty of the Attorney General, or those acting by his authority. If the election require the arrest of the accused in a district other than that in which the trial is to be had, removal proceedings must, of course, be instituted.

The duty of the commissioner is then limited to the determination of the single question of whether a *prima facie* case is made that the accused has committed an offense against the United States, indictable and triable in the district to which a removal is sought. There is no discretion reposed when such a case is made out. That bail had been given would not prevent removal, for in such a situation the sureties would be exonerated by act of the law. *Beavers v. Haubert,* 198 U. S. 77.

But in the case before us the consent of the Circuit Court, to which the New York indictments had been returned, was granted. To say that the accused had a right to a speedy trial of the New York cases may be conceded. If unreasonable delay should result from continuances due to an election to try the same accusations in another district, a very different question might arise, calling for relief through *habeas corpus.* But such a possibility affords no legal reason for denying the right of removal. The precise question has not been before raised; but in principle the case is within *In re Palliser,* 136 U. S. 257, 267; *Hyde v. Shine,* 199 U. S. 62, and *Benson v. Henkel,* 198 U. S. 1, 15.

In the *Palliser case,* a removal from a New York district, the residence of Palliser, to a Connecticut district, was objected to because the offense had been committed in New York and not Connecticut. The court said:

"But there can be no doubt at all that, if any offense was committed in New York, the offense continued to be committed when the letter reached the postmaster in Connecticut; and that, if no offense was committed in New York, an offense was committed in Connecticut; and that, in either aspect, the District Court of the United States for the District of Connecticut had jurisdiction of the charge against the petitioner. Whether he might have been indicted in New York is a question not presented by this appeal."

In *Hyde v. Shine* the fact that the conspiracy charged was one triable in California, the residence of the appellant, was

not considered as an answer to the demand for removal from California to the District of Columbia, the question of distance being the one pressed and decided as presenting no obstacle to the legal right of removal.

In *Beavers* v. *Haubert*, 198 U. S. 77, the appellant objected to removal from the district of his residence to another to be there tried, because he was at the time under indictment in the district of his residence, and under bail for his appearance for a different offense against the United States. But it was held that this fact afforded no reason for denying a removal upon the election to try the one case before the trial of the other.

In *Benson* v. *Henkel*, 198 U. S. 115, objection was made to a removal to the District of Columbia upon the ground that the offense, if any, was committed in California, and that, under the Constitution, the appellant was entitled to a trial in that jurisdiction. In dealing with that question Mr. Justice Brown said:

"The objection does not appear upon the face of the indictment, which charges the offense to have been committed within this district; but from the testimony of one of those clerks it seems that the money was received by him in certain letters mailed to him from San Francisco and received in Washington. Without intimating whether the question of jurisdiction can be raised in this way, the case clearly falls within that of *In re Palliser*, 136 U. S. 257, in which it was held that where an offense is begun by the mailing of a letter in one district and completed by the receipt of a letter in another district, the offender may be punished in the latter district, although it may be that he could also be punished in the former."

The next objection is that the District of Columbia indictments do not charge any offense against the United States.

The four District of Columbia indictments charge two sets of conspiracies. One conspiracy charged in indictment No. 26,088 is averred to have been formed between Haas, one

Theodore Price and one Edwin S. Holmes, Jr., who was an Associate Statistician in the Department of Agriculture. The charge in certain of these accounts is that these three defendants conspired to defraud the United States by secretly obtaining information from Holmes which he should acquire in his official character as Associate Statistician and should, in violation of his official duty, give out secretly to his co-conspirators, information as to the probable contents of certain official cotton crop reports in advance of the time when these reports were to be promulgated according to law. In one of the counts it is charged that Holmes was to falsify one of these official cotton crop reports, of which fact his associates were to be advised in advance. All of which information in advance of the publication of the official cotton crop reports was to be used for speculative purposes in the open market.

Indictment No. 26,098 charges that Haas and Price conspired to bribe Holmes to make this false report and to furnish them in advance information as to its contents.

Indictment No. 26,086 charges that Haas and one Frederick A. Peckham conspired with one Van Riper to bribe Holmes to give them advance information of the June report of 1905, while No. 26,087 charges Haas, Peckham and Holmes with conspiracy to defraud the United States by Holmes giving his co-conspirators advance information as to that report.

The indictments are of such great length that it is not feasible to set them out in full or to state the substance of their several counts. It is for the purposes of this case enough to say that it is averred that the Department of Agriculture includes a Bureau of Statistics established by law. That one of the govermental functions exercised by that department, particularly through the Statistical Bureau, is the acquirement of detailed information from time to time in respect to the condition of the cotton crop of the country. That this information comes through thousands of correspondents, some official and others not, through the reports of local agents scattered through the cotton region and through travel-

ing representatives of the department. From these and other sources a report is made estimating acreage, condition and the probable size of the crop. Comparisons with former reports are made, and every explanation furnished which may throw light upon the present condition and prospect of the growing crop. That the purpose is to complete and promulgate at stated times fair, impartial and reliable reports, and that said reports are issued about the third day of the months of June, July, August, September, October and December. That the information thus officially acquired and compiled and the estimates thereon are of value and do greatly affect the market price of the crop. That such reports are required to be submitted to and approved by the Secretary of Agriculture before publication, and that under the custom, practices and regulations of the Secretary of Agriculture all officers and employés are required to keep secret the information so gathered, and from in any way divulging same or giving out any information forecasting such report in advance of its official approval and promulgation.

It is averred that the said Holmes was an employé or an official in said Department, and in the Bureau of Statistics. That by virtue of his duty as such official and Assistant Statistician he acquired much of the information upon which such reports are based, and, as an official, came into knowledge of the probable contents of the regular reports. That neither Haas nor Price had any official connection and were not authorized to obtain information about such reports in advance of their promulgation. That the conspiracy was to obtain such information from Holmes in advance of general publicity and to use such information in speculating upon the cotton market, and thereby defraud the United States by defeating, obstructing and impairing it in the exercise of its governmental function in the regular and official duty of publicly promulgating fair, impartial and accurate reports concerning the cotton crop. One count charges, in addition, that the conspiracy included the making of a false report, the

facts to be given by Holmes to his co-conspirators in advance of its publication.

The counts charging a conspiracy to commit an offense against the United States in substance charge that this was to be accomplished by bribing the said Holmes to induce him to do certain acts in violation of his lawful duty not to give out advance information in respect to the condition of the cotton crop, acquired in the performance of his official duty.

Do the counts which charge a conspiracy to defraud the United States charge any offense?

The authority for the indictments charging a conspiracy to defraud is § 5440, Rev. Stat. Its language is plain and broad:

"If two or more persons conspire . . . to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy; all the parties to such conspiracy shall be liable," etc.

These counts do not expressly charge that the conspiracy included any direct pecuniary loss to the United States, but as it is averred that the acquiring of the information and its intelligent computation, with deductions, comparisons and explanations involved great expense, it is clear that practices of this kind would deprive these reports of most of their value to the public and degrade the department in general estimation, and that there would be a real financial loss. But it is not essential that such a conspiracy shall contemplate a financial loss or that one shall result. The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government. Assuming, as we have, for it has not been challenged, that this statistical side of the Department of Agriculture is the exercise of a function within the purview of the Constitution, it must follow that any conspiracy which is calculated to obstruct or impair its efficiency and destroy the value of its operations and reports as fair, impartial and reasonably accurate, would be to defraud

the United States by depriving it of its lawful right and duty of promulgating or diffusing the information so officially acquired in the way and at the time required by law or departmental regulation. That it is not essential to charge or prove an actual financial or property loss to make a case under the statute has been more than once ruled. *Hyde v. Shine*, 199 U. S. 62, 81; *United States v. Keitel*, 211 U. S. 370, 394; *Curley v. United States*, 130 Fed. Rep. 1; *McGregor v. United States*, 134 Fed. Rep. 195.

The counts charging a conspiracy to commit an offense against the United States, namely, the offense of bribing Holmes to violate his duty as a public official by giving out advance information about the monthly cotton reports, are said not to charge an offense against the United States, because there is no statute which prohibits the giving out of such official secrets in advance of lawful promulgation.

Section 5451, Rev. Stat., makes it a crime to bribe or offer to bribe "any officer of the United States," or "any person acting for or on behalf of the United States, in any official function, under or by authority of any department or office of the Government; . . . to induce him to do or omit to do any act in violation of his lawful duty." The head of each Department is authorized by § 161, Rev. Stat., "to prescribe regulations not inconsistent with law for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the preservation of its records, papers and property appertaining to it." Such regulations need not be promulgated in any set form, nor in writing.

In *United States v. Macdaniel*, 7 Pet. 1, 14, 15, it was said of departmental regulations that, "of necessity usages have been established in every department of the Government, which have become a kind of common law, and regulate the rights and duties of those who act within their respective limits."

In *Benson v. Henkel*, 198 U. S. 1, 11, a similar question

arose in an appeal from an order denying a writ of *habeas corpus* in a removal case. The appellant was charged with a conspiracy to commit an offense by bribing certain clerks of the land office to divulge the contents of certain reports. It was said that these clerks had not been forbidden by any statute to give out such information. Mr. Justice Brown, for the court, said:

"But it is clearly for the court to say whether every duty to be performed by an official must be designated by statute, or whether it may not be within the power of the head of a department to prescribe regulations for the conduct of the business of his office and the custody of its papers, a breach of which may be treated as an act in violation of the lawful duty of an official or clerk. *United States* v. *Macdaniel*, 7 Pet. 1, 14."

We have not dealt with certain minor objections which go to the form of the indictments rather than to the substance. These are matters to be determined in the court where they were found and are not proper for consideration upon a *habeas corpus* proceeding.

The exclusion of the evidence taken in *Price* v. *United States*, and offered in this case upon the petition for writ of *habeas corpus* in the Circuit Court, touching the history of the finding of indictment No. 26,088, is not a matter which is proper for review on such an appeal as this. So, also, the defense of the statute of limitations. The one defense is matter in abatement and the other of substantive defense, and both are properly matters for the determination of the court into which the indictments were returned and where the case will be tried.

It is enough to hold, as we do, that the indictments sufficiently charge an offense committed within the District of Columbia to require that the appellant shall be removed to that District for trial. *Benson* v. *Henkel*, 198 U. S. 1.

The introduction of certified copies of the District of Columbia indictments made a *prima facie* case for removal. That

case was not overcome by the copies of the New York indictments. That they laid the locus of the conspiracy in a different place from that laid in the District of Columbia indictments is true. But if such indictments are evidence for the purpose of showing that the place of the conspiracy was not in the District of Columbia, such evidence was not, as matter of law, sufficient to overcome the probable cause shown by the District of Columbia indictments. They certainly could not be regarded as admissions by the Government. They were at most evidence of the opinion of the New York grand jury as to the *locus* of the conspiracy. But if the fact be that the offense charged in both sets of indictments is identical and that the *locus* of the conspiracy is laid in one set as in one district and in the other as in a different district, it is still for the Government to determine in which of the two districts it will bring the accused to trial, and of the commissioner to determine whether a *prima facie* case has been shown that the accused had probably committed an offense in the District of Columbia which was indictable and triable there. This we have dealt with already and only refer to it now in connection with the use of the New York indictments as evidence that the offense was not committed in the District of Columbia.

Upon the whole case we conclude that the commissioner had jurisdiction, and that no sufficient reason is shown for discharging the appellant.

Final order denying writ

*Affirmed.*

BREWER, J., concurring.

I concur in affirming the orders of removal in these cases, but my concurrence must not be taken as holding that the indictments will stand the final test of validity or sufficiency. Assuming that there is a doubt in respect to these matters, as I think there is, and as seems to be suggested by the opinion in No. 367, I am of the opinion that such doubt should be

settled by direct action in the court in which the indictments were returned and not in removal proceedings.

MR. JUSTICE MCKENNA concurs in the result, but reserves opinion whether the facts alleged in the indictment constitute a conspiracy to defraud the United States.