## WALLENSTEIN et al. v. UNITED STATES.

Circuit Court of Appeals, Third Circuit.
March 3, 1928.

Rehearing Denied May 10, 1928.

No. 3611.

**I. Conspiracy ☞33(I)—Subjection of United States to financial loss is not essential to "conspiracy to defraud government" (Pen. Code, § 37 [18 USCA § 88]).**

In order to "defraud the United States in its governmental functions," within meaning of Penal Code, § 37 (18 USCA § 88), relating to conspiracy to defraud the government, the government need not necessarily be subjected to financial loss.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conspiracy.]

**2. Conspiracy ☞33(2)—Conspiracy by which physicians' prescriptions signed in blank were sold to druggists who dispensed whisky unlawfully held "conspiracy to defraud United States in governmental function" (National Prohibition Act, tit. 2, §§ 6, 7, 8 [27 USCA §§ 16, 17, 19]; Pen. Code, § 37 [18 USCA § 88]).**

Conspiracy to interfere with governmental control and regulation of intoxicating liquors for medicinal purposes, by inserting fictitious names in physicians' prescriptions signed in blank, and having prescriptions sold to druggists who dispensed whisky unlawfully held, to constitute "conspiracy to defraud the United States in exercise of its governmental function" in regulating intoxicating liquors for medicinal purposes, under Penal Code, § 37 (18 USCA § 88), and National Prohibition Act, tit. 2, §§ 6, 7, 8 (27 USCA §§ 16, 17, 19).

**3. Conspiracy ☞43(10)—Indictment charging plan to deceive by use of physicians' prescriptions to cover unlawful sale of liquor held to charge conspiracy to defraud government in regulating medicinal use of liquor (National Prohibition Act, tit. 2, §§ 6, 7, 8 [27 USCA §§ 16, 17, 19]; Pen. Code, § 37 [18 USCA § 88]).**

Indictment charging that defendant planned to deceive the Commissioner of Internal Revenue, by causing him to believe that intoxicating liquors called for by pretended legitimate prescriptions had been dispensed in good faith to patients, when in fact defendants knew that liquor would be sold unlawfully, held, sufficient to charge conspiracy to defraud United States in governmental function of regulating intoxicating liquor for medicinal purposes, under Penal Code, § 37 (18 USCA § 88), and National Prohibition Act, tit. 2, §§ 6, 7, 8 (27 USCA §§ 16, 17, 19).

**4. Conspiracy ☞47—Evidence held to sustain conviction for conspiracy to defraud United States in regulation of medicinal use of intoxicating liquor (Pen. Code, § 37 [18 USCA § 88]; National Prohibition Act, tit. 2, §§ 6, 7, 8 [27 USCA §§ 16, 17, 19]).**

In prosecution under Penal Code, § 37 (18 USCA § 88), and National Prohibition Act, tit. 2, §§ 6, 7, 8 (27 USCA §§ 16, 17, 19), for conspiracy to defraud the United States in its governmental function of control and regulation of intoxicating liquors for medicinal purposes, evidence held, sufficient to sustain conviction.

**5. Criminal law ☞822(I)—Particular portions of charge must be considered in connection with entire charge.**

Particular portions of charge must be considered in connection with charge as a whole, in determining whether trial court committed prejudicial error.

**6. Criminal law ☞823(5)—Instructions relative to purpose of agreement to cover up illegal sale of liquor held not prejudicial, in prosecution for conspiracy to defraud government, in view of other instructions (Pen. Code § 37 [18 USCA § 88]; National Prohibition Act, tit. 2, §§ 6, 7, 8 [27 USCA §§ 16, 17, 19]).**

In prosecution under Penal Code, § 37 (18 USCA § 88), and National Prohibition Act, tit. 2, §§ 6, 7, 8 (27 USCA §§ 16, 17, 19), for conspiracy to defraud the United States in control and regulation of intoxicating liquors for medicinal purposes, instructions that purpose of agreement was to cover up illegal transactions in obtaining intoxicating liquors and to defeat knowledge of such illegal practices coming to attention of government officers, held, not prejudicial, when considered in connection with remainder of charge, which fully covered indictment and evidence and defined conspiracy.

**7. Criminal law ☞1056(I)—Statement in charge was not considered, where no exception was taken to that portion of charge (Pen. Code, § 37 [18 USCA § 88]; National Prohibition Act, tit. 2, §§ 6, 7, 8 [27 USCA §§ 16, 17, 19]; rule 11, Circuit Court of Appeals, Third Circuit).**

In prosecution under Penal Code, § 37 (18 USCA § 88), and National Prohibition Act, tit. 2, §§ 6, 7, 8 (27 USCA §§ 16, 17, 19), for conspiracy to defraud the United States in regulating intoxicating liquors for medicinal purposes, statement of court, "It will not do to permit that kind of business to go on; it must be stopped," was not considered, under rule 11 of Circuit Court of Appeals, Third Circuit, where no exception was taken to that part of the charge.

Woolley, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

Leo J. Wallenstein and another were convicted of a conspiracy to defraud the United States in the control and regulation of intoxicating liquor for medicinal purposes, and they bring error. Affirmed.

John W. McGeehan, Jr., of Newark, N. J., for plaintiffs in error.

Walter G. Winne, U. S. Atty., of Hackensack, N. J., and Phillip Forman, Asst. U. S. Atty., of Trenton, N. J.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. The defendants, Wallenstein and Paul Comora, were indicted, tried, and convicted for having conspired with Herman C. Comora and 18 or 20 others to defraud the United States in its governmental function in the control and regulation of intoxicating liquor for medicinal purposes. Ten of those with whom they conspired were physicians, and had permits from the Commissioner of Internal Revenue authorizing them to prescribe and dispense intoxicating liquor to their patients, who they in good faith believed required it as medicine. The others were druggists.

The indictment charged and the evidence shows that the defendants purchased from the physicians prescriptions, signed in blank by them, for $1 each, and wrote in as patients the names of fictitious and nonexisting persons. They then sold and delivered the prescriptions to the druggists, who, thus clothed with apparent authority, dispensed intoxicating liquors, which they purchased from Wallenstein, who represented a Baltimore distillery, selling pure whisky, not to bona fide patients of the physicians, but unlawfully to the trade desiring such unlawful products, and, oddly enough, to Wallenstein himself, who, by these circuitous means, was enabled to buy back and obtain for his own uses the pure whisky he had sold.

After all the prescriptions in the books furnished to the physicians by the Commissioner of Internal Revenue, in accordance with the National Prohibition Act (27 USCA), had thus been sold to the defendants, the books containing the prescription stubs were returned by the physicians to the Commissioner, his deputies and agents, who believing that the prescriptions had been used in the legitimate practice and sold to bona fide patients of the physicians, sent them other books containing blank prescriptions, to be filled up and delivered to bona fide patients by them in their proper and lawful practice. It is specifically charged that the defendants intended "thereby to defraud the United States in its governmental functions, and in the control and regulation of permittees authorized by law to prescribe intoxicating liquors to bona fide patients, and to sell, dispense, and dispose of such intoxicating liquors on prescriptions, and in the searching out, discovering, and prosecuting of persons engaged in the unlawful sale, dispensing, and disposing of such intoxicating liquors, and to delay, hinder, hamper, and prevent the United States and its duly appointed and qualified officers and agents in the prompt discovery and due and orderly prosecution of a number of persons so engaged in the unlawful sale, dispensing, and disposing of intoxicating liquors containing one-half of 1 per cent. or more of alcohol."

The defendants say that the learned District Judge erred in overruling their demurrer, their motions to quash and to direct a verdict, and in his charge to the jury. The facts alleged in the indictment, they contend, do not support a conspiracy to defraud the United States in its governmental functions. They do not deny, however, that the facts stated are sufficient to charge an offense against the United States, and that a mere reading of the indictment shows that the object of the conspiracy was to obtain liquor unlawfully. "To defraud the United States in any manner," they say, must be restricted to such conspiracies as come within the general definition of the word "defraud," which means something more than mere hindering and delaying the government in its function of prosecuting criminals and that in all the cases, such as Haas v. Henkel, 216 U. S. 462, 30 S. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112, which have construed the statute as being "broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government," the conspiracy directly involved an officer of the United States charged with a duty in one of its departments of the government. United States v. Foster, 233 U. S. 515, 34 S. Ct. 666, 58 L. Ed. 1074; United States v. Sacks, 257 U. S. 37, 42 S. Ct. 38, 66 L. Ed. 118. No federal officer was involved here, and therefore, they argue, the demurrer and motions to quash and to direct a verdict should have been granted.

The government relies on section 37 of the Penal Code (18 USCA § 88), the National Prohibition Act, and the cases of Haas

v. Henkel, 216 U. S. 462, 30 S. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112, and Hammerschmidt v. United States, 265 U. S. 182, 44 S. Ct. 511, 68 L. Ed. 968. Section 37 of the Penal Code provides that, if two or more persons conspire either to commit an offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy is guilty of the crime which the statute inhibits.

Title 2, §§ 6, 7, and 8, of the National Prohibition Act (27 USCA §§ 16, 17, 19), provide as follows:

Section 6: "No one shall manufacture, sell, purchase, transport, or prescribe any liquor without first obtaining a permit from the Commissioner so to do, except that a person may, without a permit, purchase and use liquor for medicinal purposes when prescribed by a physician as herein provided. * * * No permit shall be issued to anyone to sell liquor at retail, unless the sale is to be made through a pharmacist designated in the permit and duly licensed under the laws of his state to compound and dispense medicine prescribed by a duly licensed physician. No one shall be given a permit to prescribe liquor unless he is a physician duly licensed to practice medicine and actively engaged in the practice of such profession."

Section 7: "No one but a physician holding a permit to prescribe liquor shall issue any prescription for liquor. And no physician shall prescribe liquor unless after careful physical examination of the person for whose use such prescription is sought, or if such examination is found impracticable, then upon the best information obtainable, he in good faith believes that the use of such liquor as a medicine by such person is necessary and will afford relief to him from some known ailment."

Section 8. "The Commissioner shall cause to be printed blanks for the prescriptions herein required, and he shall furnish the same, free of cost, to physicians holding permits to prescribe. The prescription blanks shall be printed in book form and shall be numbered consecutively from one to one hundred, and each book shall be given a number, and the stubs in each book shall carry the same numbers as and be copies of the prescriptions. The books containing such stubs shall be returned to the Commissioner when the prescription blanks have been used, or sooner, if directed by the Commissioner."

Admittedly there was a conspiracy. The question is whether or not it was to defraud the United States in its governmental function of the regulation of intoxicating liquor for medicinal purposes.

[1-3] In order to defraud the United States, it need not be subjected to financial loss. United States v. Foster, 233 U. S. 515, 526, 34 S. Ct. 666, 58 L. Ed. 1074; United States v. Barnow, 239 U. S. 74, 79, 36 S. Ct. 19, 60 L. Ed. 155. In the case of Haas v. Henkel, 216 U. S. 462, 30 S. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112, there was a conspiracy between Haas and one Holmes, Associate Statistician of the Bureau of Statistics, and others, to the effect that Holmes should give his co-conspirators information of the facts contained in the cotton report annually issued by the Department of Agriculture in advance of its promulgation and publicity for use in speculation on the cotton market, and thereby defraud the United States by depriving these reports of most of their value to the public and by degrading the department in the general estimation and cause financial loss. The court said:

"But it is not essential that such a conspiracy shall contemplate a financial loss or that one shall result. The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of government. Assuming, as we have, for it has not been challenged, that this statistical side of the Department of Agriculture is the exercise of a function within the purview of the Constitution, it must follow that any conspiracy which is calculated to obstruct or impair its efficiency and destroy the value of its operations and reports as fair, impartial, and reasonably accurate, would be to defraud the United States by depriving it of its lawful right and duty of promulgating or diffusing the information so officially acquired in the way and at the time required by law or departmental regulation. That it is not essential to charge or prove an actual financial or property loss to make a case under the statute has been more than once ruled. Hyde v. Shine, 199 U. S. 62, 81 [25 S. Ct. 760, 50 L. Ed. 90]; United States v. Keitel, 211 U. S. 370, 394 [39 S. Ct. 123, 53 L. Ed. 230]; Curley v. United States [C. C. A.] 130 F. 1; McGregor v. United States [C. C. A.] 134 F. 195."

This language is broad enough to include the conspiracy under consideration. Has it been so limited by the language used in the case of Hammerschmidt v. United States, 265 U. S. 182, 44 S. Ct. 511, 68 L. Ed. 968, as

not to cover the indictment and proofs in the case at bar? Hammerschmidt, with a number of others, was indicted for conspiring to defraud the United States by impairing, obstructing, and defeating a lawful function of its government, that of registering for military service all male persons between the ages of 21 and 30, as required by the Selective Service Act of May 18, 1917, 40 Stat. 76 (Comp. St. § 2044a et seq.). This they sought to do openly, without craft, deceit, trickery, or misrepresentation, by printing, publishing, and circulating handbills, dodgers, and other matter intended and designed to counsel, advise, and induce persons subject to the Act to disobey it. A demurrer to the indictment was overruled, and the defendants were tried and convicted, and the judgment of their conviction was affirmed by the Circuit Court of Appeals. The Supreme Court, speaking through Mr. Chief Justice Taft, said:

"To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft, or trickery, or at least by means that are dishonest. It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention."

The court held that a mere open defiance of the governmental purpose to enforce a law, by urging persons subject to it to disobey it, could not be included within the legal definition of a conspiracy to defraud the United States, and so reversed the judgment. It is not disputed that the control and regulation of intoxicating liquors for medicinal purposes is a governmental function. A conspiracy to interfere with, obstruct, impair, or defeat, by deceit, craft, trickery, or dishonest means, the government in the exercise of this function, is a conspiracy to defraud the United States in one of its governmental functions. Haas v. Henkel, supra; Hammerschmidt v. United States, supra.

The conspiracy for which the defendants were indicted was designed and intended to interfere with, impair, obstruct, and defeat by deceit and dishonest means the government in the control and regulation of the use of intoxicating liquor for medicinal purposes. The indictment expressly charged that all the matters and things set forth therein were "planned, designed and intended * * * to deceive the said Commissioner of Internal Revenue, his proper deputies, assistants and agents and to cause the said Commissioner of Internal Revenue, his deputies, assistants and agents to believe it to be the truth that the amounts of intoxicating liquors called for and represented by the said pretended legitimate prescriptions form 1403 and the said pretended legitimate compound prescriptions respectively had been sold, dispensed and disposed of on lawful and legitimate prescriptions issued on good faith to patients of said Herman C. Comora, Henry S. Fruitnight, Willis I. Dillingham, William J. Paulin, Ralph N. Shapiro, Pelegrino A. D'Acierno, George T. Spencer, Theodore H. Elsasser, Mary B. Carr, and Thomas N. Davey, respectively, when in truth and in fact, as the said defendants then and there well knew, the said amounts of intoxicating liquors called for in said pretended legitimate prescriptions respectively, and falsely pretended to have been in good faith so prescribed had been and would be sold, dispensed, and disposed of unlawfully, intending thereby to defraud the United States in its governmental functions and in the control and regulation of permittees authorized by law to prescribe intoxicating liquors to bona fide patients."

[4] The evidence established in the opinion of the jury, and in our judgment, was sufficient to justify the opinion that the defendants did conspire to defraud the United States—to interfere with, obstruct or defeat its lawful governmental function, its legitimate official action and purpose, by deceit, craft, trickery, dishonest means, misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention. Did the court err in its charge to the jury? Counsel for defendants contend that it did, and cite two or three parts of the charge in support thereof:

" * * * And that the purpose of the agreement by such methods was to cover up illegal transactions in the obtaining of intoxicating liquors and to defeat knowledge of such illegal practices coming to the attention of such governmental officers and to hinder and hamper them in carrying out the legislative intention in charging upon these officials the duty of regulating and controlling the sale of intoxicating liquors for medicinal purposes, with the further purpose of preventing the illegal sale of intoxicating liquors."

"If these acted independently—that is to say, if one simply bought and sold prescriptions and got the whisky for them, and the

other separately bought and sold prescriptions and got whisky for them—the independent transactions are specific crimes, but they are not conspiracies. 'If, however, on this evidence you should conclude that they acted in concert, that they jointly agreed to do this thing, and that each one went in his own way to get prescriptions and deliver them for liquor, that being a carrying out of the purpose that they had agreed upon, then they are guilty of conspiracy.' "

If these paragraphs stood alone, and what the court called the "purpose" of the agreement constituted the whole conspiracy itself, as distinguished from its purpose or object, the contention would have more force, but the conspiracy is one thing and its purpose or object another. Doubtless the primary object of the whole conspiracy, as counsel in another connection says, was to obtain intoxicating liquor. The methods by which they were to get it largely constituted the conspiracy, as the indictment charged. [5, 6] The portions quoted are only a part of the charge. They must be considered in connection with the charge as a whole, and when so considered we do not think they were prejudicial. The learned District Judge quite fully covered the indictment and the evidence in his charge, as the following excerpts show:

"These defendants are said to have conspired to defraud the United States by the use of false prescriptions, in order to cover up unlawful sales of liquors, and to cause government agencies, checking up druggists' to believe that the unlawful sales had been made upon bona fide prescriptions, thereby to prevent the government from discovering unlawful sales and to deceive the proper officers of the government charged with the duty of checking up of permittees; all of which the indictment charges at much more length was done by these defendants with the purpose of defrauding the United States by this deception."

"These provisions of the National Prohibition Act are intended for the purpose of giving the government, through its authorized officers, such a control of the traffic in intoxicating liquors as to prevent a sale thereof in violation of the Amendment and this enforcement Act."

"All these matters were planned, designed and intended to defraud the United States and to deceive the Commissioner of Internal Revenue and his agents and cause them to believe that the intoxicating liquor called for in such prescriptions had been sold and dispensed in good faith to patients

of the said physicians," etc., "intending thereby to defraud the United States on its governmental functions and in the control and regulations of permittees authorized by law to prescribe intoxicating liquors to bona fide patients on prescriptions and prevent the discovery and prosecution of persons engaged in the unlawful traffic."

In defining conspiracy the court said to the jury:

"Counsel for each defendant stated before you that under the evidence their clients were guilty of specific offenses, but they challenge the government's proof as to there being an offense of conspiracy, because there they are charged with acting in concert; that is, conspired together to defraud the United States."

[7] Our attention has been called to the following language of the court:

"It will not do to permit that kind of business to go on. It must be stopped. How stop it? The physicians and the druggists in this case, guilty as they are, can have their licenses revoked and be forbidden again to use prescription blanks to prescribe liquors, or the druggists to sell liquors upon prescription blanks delivered to them. Whether that will be done or not I don't know. But will that stop it? These defendants are not physicians and they are not druggists. Every one of these physicians and druggists can have his permit revoked, and still that business go on with other druggists and doctors. Therefore, the mere revoking of a permit would not accomplish very much.

It is said that the learned District Judge went beyond his judicial function of impartially declaring the law in announcing that this kind of business must be stopped and assumed that of the prohibition administrator. It may be that he went to the verge, but no exception was taken to this part of the charge, and we feel that the facts of this case do not justify us in considering it in accordance with rule No. 11 of this court.

The judgment is affirmed.

WOOLLEY, Circuit Judge (dissenting). I am constrained to dissent not from the court's statement of law but from its judgment of affirmance on the ground that the trial court submitted the case on confused issues of fact. After instructing the jury on the law in a manner which, I think, was not exceptionable, the learned trial court went further and, unconsciously no doubt, discussed the case in a way which the jury must inevitably have regarded as an instruc-

tion though on an issue which, in truth, was not in the case at all. Overlooking for a moment that the indictment charged a conspiracy to defraud the United States of a governmental function, not a conspiracy to violate the National Prohibition Act (27 USCA), the trial court said:

"But if both of these defendants by an agreement, no matter how arrived at, joined in the intent and purpose of securing from one or more of these physicians prescription blanks unlawfully and then to sell or dispose of them to one or more of the druggists named *for the purpose of securing intoxicating liquor from them unlawfully* with the further intent to defraud the United States in its governmental functions, and then one of them commits one or more of the overt acts alleged in the indictment for the purpose of carrying out the conspiracy, then both are guilty of conspiracy as charged."

Later the charge contained another reference to the purpose of the conspiracy, namely, "to cover up illegal transactions in the *obtaining* of intoxicating liquors."

These instructions, had they stopped there, might have been harmless, although the jury might have confused the reference to the defendants' agreement or conspiracy whose purpose was to obtain intoxicating liquors unlawfully with the conspiracy whose purpose was to defraud the government of one of its functions. The subject was dangerous because it had been proved beyond question that the defendants had entered into a conspiracy and that by the circuitous means employed they had procured or possessed themselves of whisky unlawfully. The conspiracy as declared was not to violate the National Prohibition Act by obtaining and possessing whisky but to defraud the United States of a governmental function—two entirely different things. Only the latter should have been charged, and it should have been charged so that the former could not be confused with the latter; yet there was a situation where the indictment alleged one conspiracy and the court seemingly charged two: One, to get whisky, and the other to defraud the government. As conspiracy was proved and as the defendants got the whisky, the jury, in obedience to the court's instruction, could do nothing else but find the defendants guilty of a conspiracy of that kind, wholly without regard to whether they could find them guilty of the conspiracy alleged.

I realize the gravity of the crime charged, the character of the testimony given, and, if guilty, the enormity of the offense the de-

25 F.(2d)—45½

fendants committed, yet I cannot break away from the belief that, quite unnecessarily, the learned trial court submitted to the jury an issue which was not in the case and submitted it in a manner which forced the verdict of conviction without regard to whether the defendants were guilty or innocent of the charge laid against them by the indictment. The jury departed for their deliberations with the concluding paragraph of the charge fresh in their minds. It was as follows:

"Now, take this situation as it has been developed here. Assuming now that we believe the testimony of the doctors and druggists, here is quite a scheme to do what, to get liquor illegally, a scheme in defiance of the positive provisions of congressional legislation, and in the enforcement of which designated government officials have the control and supervision. Now, I say if we take the testimony of these doctors and druggists there is no question about that, is there, as I understood the argument of counsel. On that proposition, there is not any contention. It will not do to permit that kind of business to go on. It must be stopped. How stop it? The physicians and the druggists in this case, guilty as they are, can have their licenses revoked and be forbidden again to use prescription blanks to prescribe liquors, or the druggists to sell liquors upon prescription blanks delivered to them. Whether that will be done or not I don't know. But will that stop it? These defendants are not physicians and they are not druggists. Every one of these physicians and druggists can have his permit revoked, and still that business go on with other druggists and doctors. Therefore, the mere revoking of a permit would not accomplish very much. It would remove these particular individuals from the apparent authority to prescribe or to furnish liquors, but it would not in any way affect the brokers who are using permits in the way that has been testified they were used here, so that in this present case we are only concerned with the guilt of the defendants charged, and that charge is conspiracy. If these acted independently, that is to say, if one simply bought and sold prescriptions and got the whisky for them, and the other separately bought and sold prescriptions and got whisky for them, the independent transactions are specific crimes, but they are not conspiracies. If, however, on this evidence you should conclude that they acted in concert, that they jointly agreed to do this thing, and that each one went in his own way to get prescriptions and deliver them for liquor, that being a carrying out of the pur-

pose that they had agreed upon, then they are guilty of conspiracy."

Immediately the attorney for the defendants asked an exception to this particular instruction and it was allowed. I think the instruction amounted to plain prejudicial error which this reviewing court, even without exception or assignment of error, should notice of its own motion under rule 11.