### WOLF et al. v. UNITED STATES. *

(Circuit Court of Appeals. Seventh Circuit. April 10, 1922. Rehearing Denied October 6, 1922.)

#### No. 2941.

1. **Conspiracy ☞43(10)—Indictment for conspiracy to defraud the United States held sufficient.**

    An indictment for conspiracy to defraud the United States by evading inspection of goods manufactured under contracts for war supplies *held* not required to set out copies of the contracts, or to allege the authority of the officers who signed the contracts.

2. **Conspiracy ☞33—Financial loss not necessary element of conspiracy to defraud.**

    Financial loss by the government is not a necessary element of the offense of conspiracy to defraud the United States.

3. **Criminal law ☞1036(1), 1054(1)—Admission of evidence not objected nor excepted to not ground for reversal.**

    Admission of evidence not objected nor excepted to cannot be made the basis of assignments of error.

4. **Criminal law ☞508(1, 9), 510—Testimony of accomplice competent, although credibility may be attacked, and may be alone sufficient to support conviction.**

    Testimony of an accomplice may be attacked before the jury as incredible and unworthy of belief and prompted by unworthy motives; yet it is competent and may standing alone support a conviction.

5. **Criminal law ☞823(10), 1038(2, 3), 1173(2)—Omissions in instructions held not ground for reversal in view of other instructions, undisputed evidence, and failure to object or ask further instruction.**

    Omission in the charge to specifically point out the necessity of proof of overt acts on a trial for conspiracy to defraud the United States *held* not ground for reversal where no objection was made or further instruction requested, and where testimony to some of the acts charged was undisputed, and the court had elsewhere fully stated the elements of the offense.

In Error to the District Court of the United States for the Southern Division of the Southern District of Illinois.

Criminal prosecution by the United States against Fred Wolf and Paul A. Wolf. Judgment of conviction, and defendants bring error. Affirmed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 258 U. S. —, 43 Sup. Ct. 164, 67 L. Ed. —.

James M. Johnson and Donald W. Johnson, both of Kansas City, Mo., for plaintiffs in error.

Sylvester R. Rush, of Chicago, Ill., and Edw. C. Knotts, of Springfield, Ill., for the United States.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Defendants, father and son, were convicted and sentenced to serve prison sentences in addition to paying substantial fines for violating section 37 of the Criminal Code (Comp. St. § 10201). The specific charge preferred against them was a conspiracy to defraud the United States, followed by overt acts committed by one or both in furtherance of such conspiracy. The means adopted by defendants as alleged in the indictment were directed toward an evasion or an avoidance of certain government inspections.

When the United States entered the war in 1917, defendants were conducting a relatively small harness business in Quincy, Ill. Their concern sought and secured a small contract with the government, which was followed by many others, until the aggregate of such government contracts totaled $1,825,223. The number of their employees was doubled and redoubled and then doubled again, and it was difficult to secure the services of experienced labor, while inexperienced help was more or less unsatisfactory. It is claimed that both quantity and quality suffered thereby.

The government sent several inspectors, one or more being constantly in attendance. Goods were marked "Rejected" or "Accepted" by the inspectors after inspection, and when accepted they were promptly shipped out, as the demand for the finished goods was urgent. The fraud which was the object of the alleged conspiracy grew out of this inspection, and the most positive and persuasive evidence in support of the charge came largely from witnesses who were employed in the factory and who were in some instances self-confessed accomplices.

The assignments of error included attacks upon rulings involving: (a) The sufficiency of the indictment; (b) the admission of evidence; (c) the motion to dismiss for want of sufficient evidence to support the verdict of guilty; (d) instructions to the jury.

It is hardly necessary to consider separately the various criticisms of the indictment. The reports abound in decisions which lay down the requirements so fully that it is hardly justifiable to again restate them. This court had occasion to consider at length the necessary and proper allegations charging a conspiracy to defraud in Jelke v. United States, 255 Fed. 264, 166 C. C. A. 434, and the authorities were there collected fully and carefully. The rules there laid down have since been reannounced by this court.

[1] Applying the rules there announced to some of the criticisms directed toward the indictment under consideration, we find no merit in the demand that the contracts (some 14 in number, which, if set out in full, would have covered 225 printed pages) should have been set forth hæc verba in the indictment. Equally untenable is the objec-

tion that the indictment fails to allege the authority of the officials who signed the contracts for and on behalf of the government.

In the present case not only is the allegation respecting the making and the terms of the contracts sufficiently specific, but, even as against a demand for a bill of particulars, the court would have been justified in refusing the request.

[2] Equally untenable is the claim that the indictment is bad because it fails to allege that the government suffered injury through defendant's fraud. Financial loss by the government is not a necessary element of the crime. Haas v. Henkel, 216 U. S. 462, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112. It is only necessary to obstruct or defeat the lawful functions of any department of the government. Here it is charged that the fraud consisted in defeating or impairing a proper and necessary inspection of goods manufactured by defendants' company for the government. Obviously this was within the condemnation of the statute. We might add that such allegations, coupled with the rest of the charge, were sufficient to impute a financial loss, were it necessary to sustain the indictment, for defective merchandise must necessarily be worth less than stock made of good leather and properly manufactured.

[3] Much of the criticism directed toward the reception or rejection of evidence finds no support in the record. No objection was made to the reception of such evidence, nor were there any exceptions thereafter taken. In other words, the parties chose to speculate upon what the answers would be and later upon their effect upon the jury. It is too late for them now to ask us to invoke section 269 of the Judicial Code, as amended by the act of March 3, 1911 (Comp. St. § 1246), and to view the record as though objections were duly made and exceptions noted.

In view of the serious character of the offense and the alleged hardship of such sentences as were imposed upon the two men, who up to this time had enjoyed an enviable and untarnished reputation in the community where they have long resided, we have gone through the record and examined the evidence carefully, notwithstanding the absence of objections, with the result that we have not been able to find any reversible error in the rulings respecting the admission and rejection of evidence. The trial judge was especially fortunate in regulating the field of inquiry, yet giving to defendant the widest possible latitude in cross-examination. There was testimony received which may have been prejudicial to defendants, but it was incidental to facts which were relevant and competent.

The criticism that the court permitted the government to bring out prominently the fact that the elder defendant was of German birth and was pro-German in sentiment during the war we have most carefully examined, with the result that we find nothing to sustain the charge except as counsel has called our attention to one bit of evidence. A government inspector was asked about a conversation between himself and the elder Wolf, who was endeavoring to get the inspector to pass certain saddles that had been previously rejected. The entire conversation was called for and given without objection. As a part

of Wolf's statement the witness said: "Oh, take them. They will all get sunk anyway." No exception was noted and no request made to caution the jury respecting the effect of such testimony.

Considering the length of the trial and the volume of testimony taken, it is apparent that the court was scrupulously careful and successful beyond common experience in such matters, in avoiding all foreign or collateral issues.

[4] Directed verdict: In support of the assignment of error dealing with the court's denial of defendants' motion to direct a verdict in their favor, counsel vigorously and bitterly attack the government's witnesses, particularly those who were described as accomplices, overlooking the distinction between credibility and competency. The testimony of an accomplice may be attacked before the jury as incredible and unworthy of belief and prompted by unworthy motives; yet it is still competent, and may, standing alone, support a conviction. For collection of cases, see United States v. Heitler (D. C.) 274 Fed. 401. The duty of the appellate court, where there is some testimony to support a verdict, has been repeatedly stated. This court in the recent case of Applebaum v. United States (C. C. A.) 274 Fed. 43, has expressed it fully and clearly and a restatement is unnecessary.

Another position taken by defendants in support of this assignment deals with the relatively small amount of inferior or rejected goods. This argument fails to take into consideration any merchandise that may have escaped detection through the defendants' practices. It was not until shortly before all manufacture of goods was stopped that the government inspectors opened certain boxes and found therein uninspected as well as rejected merchandise. What had been included in prior shipments was of course not capable of ascertainment. Moreover, a dismissal could not have been granted even though the fraud was not of the magnitude and did not cover the period of time that the government claimed.

[5] Respecting the charge to the jury, but a single assignment is worthy of consideration. The court said among other things:

"Gentlemen of the jury, the essence of this proceeding is: Did the defendants enter into a conspiracy in manner and form as charged in the indictment? You are not trying the defendants in this case for having done any particular act which has been detailed here; that is, you are not trying to find whether or not they are guilty of changing a cinch pad. You are not to find whether or not they are guilty of erasing a rejected mark. You are not here trying to find whether or not they are guilty of having taken approved saddles out of cases and putting rejected ones in their places. You are here to try the question as to whether or not these defendants agreed between themselves or with others to defraud the government of the United States. The other matters I have referred to just now are what are known as overt acts committed in pursuance of the unlawful combination, or confederacy or conspiracy. You have a right to consider the overt acts if you find that any have been proved as circumstances tending to establish the ultimate fact which you are trying."

The vice, it is claimed, in this language consists of the court's failure to include as a necessary element of the crime of conspiracy the overt act. No objection was taken to this portion of the charge. No request was made to charge in respect to the subject of overt acts. We have, however, reviewed the charge as though every objec-

tion that could have been made appeared, and have concluded that no reversible error appears.

It might have been better had the charge included more specific reference to the overt acts. It was, however, an omission to insert what might properly have been part of the charge, rather than an erroneous statement of the law.

Mistakes of omission or incompleteness of a charge may be prejudicial, but whether section 269 of the Judicial Code, as amended, requires us to note unassigned error of this nature may be seriously questioned. The duty of counsel to point out the omissions, to object and to except, is certainly as great as the duty of the court to include all that might properly be inserted in the charge. Certain essential elements in the crime, in view of all the evidence in a given case, may become quite unimportant due to the undisputed character of the evidence or to the fact that such necessary facts are admitted during the trial. Naturally under such circumstances the court would not elaborate upon that phase of the case. The most successful charge brings sharply and prominently to the jury's attention the disputed and crucial issues, and best serves its purpose when it makes intelligent determination by the jury of such issues unavoidable. Certainly this court is not justified in disturbing a judgment when the omission of the court to elaborate upon one phase of the case is in reference to a subject concerning which there is little or no dispute. Likewise the court's failure to dwell upon the phase of the case not in serious dispute is generally beneficial to the defendant, and counsel's failure to direct attention thereto may well have been due to a desire not to force an issue in support of which his position was untenable.

Applying these observations to the present case, we find that the government charged some eight overt acts, any one of which, if proved, would have been sufficient. Some of these overt acts the testimony established without dispute. They were not denied by either defendant. In fact, they were admitted by one or both. The issue, therefore, so far as the overt act is concerned was directed, not to whether defendants, or one of them, committed the act, but whether it was done "to effect the object of the conspiracy," and this, of course, turned largely upon the answer to the question: Was there a conspiracy to defraud?

But passing this phase of the question, upon which alone we would be justified in refusing to reverse a judgment thus entered wherein the charge was given without exception and without request for further instructions being made, and proceeding to the further consideration of the instruction as given, we conclude it affirmatively appears that no prejudicial error arose from the giving of that portion of the charge above quoted.

It would be unfair to the charge as given to read but a single sentence or paragraph therefrom. The entire charge must be examined. We find from a reading thereof that in the first paragraph the definition of the crime of conspiracy was given to the jury in the language of the statute. The jury was there informed that to constitute the crime "one or more of such parties" must do an act "to effect the object of the conspiracy." It was after the crime as defined by the statute

was thus stated that the District Judge took up the meaning and definition of the word "conspire." It was as a part of his exposition of the subject that the words above quoted were spoken. The court was distinguishing between the substantive offense or offenses which were the objects of the conspiracy and the conspiracy itself. So viewed and understood, it was helpful and favorable to the defendant, at the same time clarifying the meaning of the word "conspire."

Instead of calling the court's attention to its failure to specifically charge that conspiracy was not established unless, in addition to the unlawful conspiracy to defraud, one of the conspirators committed an act "to effect the object of the conspiracy," defendants' counsel at the close of the charge asked the court to charge the jury as follows:

"The defendants request the court to instruct the jury that, to constitute a conspiracy, the agreement between the parties to the conspiracy must be an active agreement; that mere passive knowledge of acts which may be part of a conspiracy and acquiescence in other acts does not constitute a conspiracy."

Here again all reference to the overt act as an element in the crime was omitted, and it illustrates the fact that both counsel and court recognized and appreciated that the sharply controverted issue was over the unlawful agreement or understanding, rather than over the overt acts.

In view of the first paragraph wherein the crime was correctly defined and the necessity of an overt act stated, in view of the failure of defendants' counsel to object or call the court's attention to its omission to deal specifically with this element in the quoted portion of the charge, and in view of the request of defendants' counsel above quoted, we are unable to say that there was error in the charge or that defendants were in any way prejudiced by its giving.

The judgment is affirmed.