**UNITED STATES v. BELISLE et al.**

**No. C-16114.**

United States District Court
W. D. Washington, S. D.

Sept. 20, 1951.

The Assistant Postmaster, Superintendent of Mails, Assistant Superintendent of Mails, a Supervisor, and ten "mounted carriers" at the Vancouver, Washington, post office were indicted for conspiracy to defraud the Government in the following respects:

1. By making and submitting collusive bids to furnish motor vehicles for the use of the Vancouver Post Office.

2. By depriving and attempting to deprive the Post Office Department of the benefit of competitive bidding for furnishing motor vehicles for the use of said Post Office.

3. By discouraging, intimidating and threatening others from submitting bids or entering into contracts for furnishing motor vehicles for the use of said Post Office.

The evidence for the Government tended to show that the mounted carriers during the period of the alleged conspiracy (1942–1951) put in identical bids for the use of their family automobiles, on their respective mail routes. They did this after confer-

ences among themselves. The then Postmaster, who received the bids and transmitted them to Washington knew the carriers were conferring. He thought this was all right and he testified that his superiors in Washington were apprised of the fact, and they thought it was all right. In fact, during the war period it was of special advantage to the Government to have the mounted carriers use their family automobiles, because of the shortage of cars and the practical impossibility of getting others than the carriers to provide equipment for use by the Government.

The jury returned a verdict of Not Guilty.

J. Charles Dennis, U. S. Atty., of Tacoma, Wash., and Harry Sager, Asst. U. S. Atty., of Sumner, Wash., for plaintiff.

Claude C. Snider, of Vancouver, Wash., Leo A. McGavick and Wallace B. Hager, both of Tacoma, Wash., for defendants.

McCOLLOCH, District Judge.

The Government in this case, as in every criminal case, has the burden of proving beyond a reasonable doubt the material allegations of the indictment by which the defendants have been charged. This means such a doubt as would cause the average reasonable person to hesitate in making an important decision in his or her own affairs.

The charge here is under the conspiracy statute. It is not charged that any crime, what we call a substantive crime, has been committed. It is charged the defendants conspired to do something. It is not charged that they conspired to violate some statute. That is not an unusual situation in Federal practice where a group of people is charged with conspiring to violate some statute; for instance, under the old prohibition law persons were charged with conspiracy to violate the National Prohibition Act [41 Stat. 305].

There is no particular statute here the defendants are charged with violating. They are charged with seeking to interfere and hamper the Government in obtaining

competitive bids for automobiles needed at Vancouver.

That opens up a pretty broad field. The statute [1] reads, that when two or more persons conspire to defraud the Government they may be prosecuted under the conspiracy statute. The words "defraud the Government", by court decisions, have been broadened to include interference with or hampering any legitimate Government activity.

It was the desire of the Post Office Department at Vancouver to obtain competitive bids (so the Government charges) for these automobiles; and the Government charges that these defendants conspired to interfere with that by collusive bidding, by making and submitting collusive bids,—I am reading from the indictment—to furnish motor vehicles; second, by depriving and attempting to deprive the Post Office Department of the benefit of competitive bidding; and, third, by discouraging, intimidating and threatening others from submitting bids or from entering into contracts to furnish motor vehicles.

That is what you are trying. We are not trying an alleged conspiracy to sabotage the Spady equipment, much less the allegation that the Spady equipment was sabotaged. That comes in merely in connection with the Government's proof in support of its charges, the three that I have read.

As I say, in this case, like in any other criminal case, the Government has the burden of proof. The Government must satisfy you, beyond a reasonable doubt, before you may find these defendants, or any of them, guilty of the charge that they entered into a conspiracy.

Mr. Sager for the Government made a very good statement in his opening remarks, about what conspiracy is. I doubt if I can say it as well as he did. It is a combination of two or more people to do something unlawful. It has been described as a partnership in crime.

Just because all fourteen of these people are charged does not mean you must find them all guilty or all not guilty. It takes only two to make a conspiracy, and

1. 18 U.S.C.A. § 371, and 18 U.S.C. (1940 Ed.) § 88.

you could find any two of these people guilty, if you think the evidence justifies that, and find the other twelve not guilty, or you can find as to any two or more.

You have a situation here which calls for comment, about people who come in (so it is charged), who come into an alleged conspiracy after it is started. The charge is, that this conspiracy started back in 1942, and that it continued through January 10, 1951. As to those who were not mounted carriers at the time, according to the Government's theory, and who became mounted carriers later, it is the Government's theory that they became parties to the conspiracy; they joined it.

The law as to that is, that anyone who joins a conspiracy at any time during its life, knowing full well that such conspiracy is going on, and who makes himself a party to it is as liable as if he were one of the original members. Once a conspiracy has been established, all who are parties to it are bound by the acts of all others, like the law of partnership. Also, after a conspiracy has been established, and while it is in existence, the statements of any conspirators are, in legal effect, the statements of all.

 Therefore, before you can find these defendants or any of them guilty, you must first find, beyond a reasonable doubt, that there was a conspiracy and that these defendants were parties to it. If you are not satisfied of that beyond a reasonable doubt, it will be your duty to return a verdict of Not Guilty.

If a conspiracy did exist and you so find, then you will proceed to your next proposition: In what respect did the conspirators conspire to defraud the United States?

There are three charges as to that. The Government does not have to prove all three of them. It could make out a case if it just proved one, any one—I read them to you a moment ago—and that, too, would have to be established to your satisfaction beyond a reasonable doubt and to a moral certainty.

 The law of conspiracy has an element—in this country, not in the old country, from which we got it—but in this country the law of conspiracy has the element of requiring the commission of overt acts. When we transplanted the law of conspiracy to this country we added that feature to it. If there is a conspiracy, the theory of the law is that some one of the conspirators must do something in furtherance of the conspiracy, and that we call an overt act. The philosophy of that is to permit conspirators to withdraw before they actually do anything in furtherance of the conspiracy.

A great deal of this indictment, which you will have with you in your jury room for your reference, a great deal of the typing has to do with the enumeration of alleged overt acts. There are fourteen of them. There has been really no dispute about them.

If there was a conspiracy, and if you find, in accordance with the allegations of the indictment, that the conspiracy was of the sort alleged, in one or more of the three items alleged, that will be sufficient. As to overt acts, there is no dispute. Theoretically, it is the duty of the Government to establish one or more of the overt acts beyond a reasonable doubt, but as I say, there is no dispute as to them. I do not want you to get confused. I want you to confine yourselves to whether there was a conspiracy and whether it was of the sort alleged.

That brings me to what I consider to be the crux of this case. It has not been stressed as much as some of the other features in the arguments of the lawyers.

It is a serious matter to charge a group of men like the defendants here with having committed the crime of conspiracy to defraud. That is a felony and, while it is no concern of yours what the punishment should be—that would be my problem, if you find them guilty—an additional burden when a felony of this sort is charged, is put on the Government. There are a lot of offenses that we know as misdemeanors; offenses, for instance, that are regulatory in nature, where all the Government needs to do is to prove that a man committed the act charged.

A typical instance of that would be the Indian liquor laws, which you know about.

If a man is charged with selling liquor to an Indian, it does not do him any good to . say, "I thought he was a Filipino". That does not do the defendant any good. If he was an Indian, the defendant is out of luck.

### Specific Criminal Intent [2]

▉ Now, that is not true with this kind of a charge. In connection with this kind of a charge, the Government must prove the act here of conspiracy, and that it is the sort alleged; . more, it must prove that it was done and entered into with criminal intent, with specific criminal intent.

Even though you find these defendants guilty of the conspiracy charged and the commission of overt acts, you may not find them guilty unless you also find, beyond a reasonable doubt, that they entered into the conspiracy with specific criminal intent.

That means a great deal more than the charge in the usual criminal case, because we have here what, to me, is a strange situation. This trouble broke out at Vancouver with a change in Postmasters. Things were going along—I don't know just what word to use, because the Government's theory appears to be that things had not been all right. But, anyhow, these particular difficulties broke out beginning with a change in the administration down there, and, so far as anything I have heard here, these defendants had no knowledge whatever during the period from 1942, when it is alleged this conspiracy began, and 1949, when the new Postmaster came in—they had no idea they were doing anything wrong. The then Postmaster, Mr. Blythe, came here and testified that he felt everything he was doing was legal; he thought it was not only within the regulations but it was in the interest of the Government. He said further, as I understand, that the people in Washington, D. C.

understood, just as fully as he did, what was going on, and that they not only approved it, but it was what .they wanted.

Now, Ladies and Gentlemen, you cannot make a crime out of that. You certainly cannot make a felony out of it. That brings us back to criminal intent. If a man does not know he is doing something wrong, he does not have criminal intent. If what he is doing he thinks is all right and his superiors believe it is all right and encourage him to do it, that is not a crime, even though, in fact, technically it is wrong, because it lacks the necessary ingredient of criminal intent. You have got to be doing something with a bad motive, with a bad heart. You have got to know you are doing wrong to be guilty of a felony, at least this type.of a felony, in my opinion. That did not exist here during the period of Blythe's administration.

▉ That is my view of it. You can reject it. This is a question of fact, one of the things that you have to pass on. You cannot find these defendants, or any of them, guilty unless you find, in addition to the conspiracy, if one existed, they did what they were doing, knowing it was wrong, and with specific intent to defraud the Government.

### Collusion [3]

There is one charge here of collusion, by making and submitting collusive bids, and I will just say a word about that.

▉ Collusion implies secrecy. The mere. making of identical bids, in and of itself, is not collusive bidding. It is identical bidding, but it is not collusive bidding. Collusive bidding is when you are asking a group of people to come in and bid, and they fool you; they pretend to be competing, when in fact they are not, and they are dishonest with you. That is collusive

---

2. I do not see how anything could be added to the discussion of *mens rea* by the English judges in Regina v. Tolson (1889), 23 Q.B.D. 168; 16 Cox C.C. 629; 60 L.T. 899; 58 L.J.M.C. 97; 37 W.R. 716.

Justice Jackson's recent opinion in the Morissette case, Morrissette v. U.

S., 342 U.S. 246, 72 S.Ct. 240, is the classic in the American Federal field.

3. "Collusion. A secret agreement and co-operation for a fraudulent or deceitful purpose * * *. Collusion implies a secret understanding * * *." Webster's New International Dictionary, Second Edition, Unabridged.

bidding. Fraud is of the essence of "collusion".

You are the exclusive judges of the credibility of the witnesses and of the weight and value of their testimony.

I did not intend to mislead you in what I said about the period of the Blythe administration. This indictment covers the period from 1942 to 1951. Of course, if you find a conspiracy existed, as charged, of the sort charged, and that it was with criminal intent, intent to defraud the Government, at any time during that period, you would find the defendants guilty, any two or more that may be found by you to be involved in that.

The thirteenth, or alternate juror, is excused from further consideration of this case. I want to thank all of you for the patient attention you have given to this long case, and the lawyers, too, who have tried it like good lawyers and gentlemen.