**UNITED STATES of America,**
**Plaintiff,**

v.

**John C. KAISER, Gordon R. Brasch, Paul N. Crawford, Ralph W. DeVine, Herman Duyvejonck, Thomas M. Downs, Clair R. Hamburg, Edgar A. McDonald, Guy E. Sherman, Charles F. Thorpe, John D. Wilson, and Ernest Woodward, Defendants.**

**Crim. No. 3756.**

United States District Court
S. D. Illinois, N. D.

Jan. 13, 1960.

Harlington Wood, Jr., U. S. Atty., Springfield, Ill., for plaintiff.

Winstein & Rimmerman, Rock Island, Ill., for defendants Crawford, Kaiser, Hamburg and Woodward.

John W. Heberling, Rock Island, Ill., for defendants Brasch, Duyvejonck, Sherman and Wilson.

Robert W. Brinn, Rock Island, Ill., for defendant McDonald.

Henry N. Neuman, Davenport, Iowa, for defendant Ralph W. DeVine.

Sinnett, Rink & Coryn, Rock Island, Ill., for defendant Charles F. Thorpe.

MERCER, Chief Judge.

Defendants are charged by indictment with the crime of conspiracy to defraud the United States in violation of Title 18 U.S.C. § 371. That section provides in pertinent part: "If two or more persons conspire * * * to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each" shall be punished as provided therein.

The conspiracy charged is alleged to consist of a scheme by defendants to embezzle a part of the tolls paid by motorists using the Rock Island Centennial Bridge. The indictment alleges that the City of Rock Island, Illinois, constructed that bridge pursuant to an Act of Congress which authorized the City to construct a bridge across the navigable waters of the Mississippi River. That act further permitted the City to fix and collect tolls from the users of such bridge for the purpose of defraying costs of operation and maintenance of the bridge and for amortizing the cost of construction of the bridge itself. The defendants were, at all pertinent times, employed as toll collectors by the Rock Island Centennial Bridge Commission, a municipal corporation, created by the City of Rock Island to operate the bridge, collect tolls, and administer the financial machinery for amortization of cost of construction. The indictment further charges that the City, acting through the Bridge Commission, did fix a schedule of tolls which it was defendants' duty to collect, and for

which defendants were duty bound to account. Finally, the indictment alleges that defendants conspired together to embezzle and convert to their own use a part of the tolls received by them from motorists using the bridge and, in furtherance of that scheme, did the overt acts alleged in paragraph 7 of the indictment.

Defendants have moved to dismiss the indictment on various grounds, including the ground that it does not charge an offense against the United States. In the view which I take of the case, we need consider only the latter ground for dismissal.

Paragraph 6 is the meat of the indictment and upon this paragraph the indictment must stand or fall. That paragraph is therefore quoted, in haec verba, to wit:

"6. That on or about July 28, 1954, and for a long time prior thereto, and continuously thereafter up to and including July 28, 1959, said John C. Kaiser, Gordon R. Brasch, Paul N. Crawford, Ralph W. DeVine, Herman Duyvejonck, Thomas M. Downs, Clair R. Hamburg, Edgar A. McDonald, Guy E. Sherman, Charles E. Thorpe, John D. Wilson, and Ernest Woodward, hereinafter referred to as defendants, at, to-wit, said City of Rock Island, in the County of Rock Island, in the State of Illinois, in said Northern Division of said Southern District of Illinois, and at divers other places to the grand jurors unknown, did knowingly, wilfully, wrongfully, fraudulently, and illegally combine, conspire, and confederate together, and with each other, to defraud the United States of America by hampering impeding, hindering, controverting and delaying the accomplishment of the intent and purpose of the several Acts of Congress referred to in paragraphs 1 and 2 of this indictment, [which authorized the City to construct, and later to reconstruct, the bridge], to promote interstate commerce, to improve the postal service,

to provide for the military, and particularly with the purpose and intent of said Acts of Congress that the said tolls should be utilized in part to accomplish the amortization of the cost of the construction and expansion of said bridge and its approaches as soon as possible, so that payment of tolls by the United States of America, its agents, officers and employees, and others using said bridge, would no longer be required, that is to say:

"(a) It was a part of said conspiracy that the said defendants would and did purloin, embezzle, misappropriate and convert to their own use and benefit, tolls and portions of tolls received by them from transits over said Centennial Bridge; and

"(b) It was a further part of said conspiracy that said defendants would and did falsely report to said Rock Island Centennial Bridge Commission the amount of tolls actually collected for transits over the said bridge and would and did conceal and cover up by trick, scheme, and devise, the amount of the tolls which said defendants, and each of them, had misappropriated to his own use and benefit."

The principal basis for defendants' contention that no crime against the United States is charged, is the averment that the only crime alleged is one to embezzle monies from the City of Rock Island, not from the United States, and the further averment that there is no charge of interference with any governmental function of the United States.

■ The definitive interpretation of the application of Section 371 is found in Hammerschmidt v. United States, 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968. There it was argued that the phrase "defraud the United States" as used in the statute [Section 37, predecessor of Section 371], required a cheating of the government out of some property right or money. That narrow construction of the language was rejected by the Court in the following language, 265 U.S. at page 188, 44 S.Ct. at page 512: "To conspire to defraud the United States means primarily to cheat the government out of its money, but it also means to interfere with or to obstruct one of its lawful governmental functions by deceit, craft, trickery, or at least by means that are dishonest." There are numerous reported cases which construe the phrase "defraud the United States," to the effect that the statute penalizes any conspiracy to defraud the government either of a property interest or by obstructing some lawful function of the government. E. g., Wolf v. United States, 7 Cir., 283 F. 885, certiorari denied 260 U.S. 743, 43 S.Ct. 164, 67 L.Ed. 492; United States v. Klein, 2 Cir., 247 F.2d 908, 916; Heald v. United States, 10 Cir., 175 F.2d 878, certiorari denied 338 U.S. 859, 70 S.Ct. 101, 94 L.Ed. 526; Berenbeim v. United States, 10 Cir., 164 F.2d 679, certiorari denied 333 U.S. 827, 68 S.Ct. 454, 92 L. Ed. 1113; Fowler v. United States, 9 Cir., 273 F. 15; Cendegarda v. United States, 10 Cir., 64 F.2d 182; Outlaw v. United States, 5 Cir., 81 F.2d 805.

■ No case is found which has exceeded the limits of the Hammerschmidt rule in sustaining a conspiracy indictment. To constitute a crime against the United States the acts alleged as a violation of Section 371 must have as their purpose either a purpose to defraud the government of some property right or pecuniary interest or a purpose to obstruct or defeat some lawful function of the government, or a department, or agency thereof. In my opinion those limits should not, and cannot, be expanded. Unless this indictment reasonably charges a scheme to defraud the United States of some pecuniary interest or a scheme to obstruct some lawful function of the United States, the indictment should not be dignified by judicial recognition.

To find a peg upon which to hang this indictment, the government relies on the language of the enabling act which provides that tolls might be charged and adjusted to provide a fund sufficient to

548

pay for the cost of maintaining, operating, and repairing the bridge and to establish a sinking fund for the amortization of the costs of construction thereof, and, further, that after a sinking fund of sufficient size to amortize the costs of the bridge had been established, the bridge should thereafter, be toll free. The government recites that provision and seeks to hang a governmental interest upon the congressional purpose, or hope, that some day the bridge will be toll free. The government says, first, the hope that some day the bridge would be toll free for its use, as well as for the use of other persons, is a governmental property right which is infringed by the alleged embezzlement by defendants of tolls collected from users of the bridge. It says, secondly, that the provision for a toll free bridge across the Mississippi River at Rock Island is stated in the enabling act under which the bridge was constructed and that, therefore, the alleged embezzlement by defendants of tolls collected tends to obstruct and defeat that congressional purpose.

I think both contentions are specious. Any property right of the government involved here is as illusory as the will-o-the-wisp. The indictment does not allege, and cannot allege, that the bridge will ever be toll free. Time and circumstances alone will enable that fact, if it ever be a fact, to be known. The hope that one day a bridge will be toll free cannot be dignified by the name "property right". Nor does the argument that any governmental function is obstructed stand on any firmer ground. The govern-

ment does not contend, and it is difficult to see how it possibly could contend, that interstate commerce or military or postal traffic is obstructed or impeded even if every charge in the indictment is true. In this context, also, the government again falls back on the argument that the acts of defendants delay the day when the bridge might be toll free and it is said, such acts frustrate the congressional hope that some day all traffic might travel over the bridge without paying tolls.

If Section 371 is to be expanded in such manner, truly, conspiracy is a boundless offense, and the door is opened to such nebulous charges that no man may draw a free breath. In the realm of surmise, it is conceivable that many acts of daily existence can be construed to impede or obstruct some loosely defined congressional purpose, or, as here, an expressed congressional hope. And it is almost a certainty that every act committed against the laws of a state by two or more persons acting in concert would also run counter to some congressional expression in one or more of the many acts of Congress.

The basis of this indictment goes far beyond the proper interpretation of the statute, as suggested by the Hammerschmidt case, and the indictment is wholly unprecedented. No case is cited by the government and none has been found, which sustains a Section 371 indictment which does not allege a pecuniary loss or the frustration of some lawful function of the government, or some department or agency thereof.[1]

1. Indicative of judicial interpretation and application of Section 371 are the following cases, upon many of which the government relies to sustain this indictment: Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, alleged scheme to bribe assistant United States attorneys to influence them in the performance of their duties charged a conspiracy to defraud the United States; Hammerschmidt v. United States, 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968, open defiance of the law is not a conspiracy to defraud within the meaning of the statute; United States v. Jan-

owitz, 257 U.S. 42, 42 S.Ct. 40, 66 L.Ed. 120, alleged conspiracy to obtain by illegal means and to alter treasury certificates and stamps charges an offense within statutory language; United States v. Plyler, 222 U.S. 15, 32 S.Ct. 6, 56 L.Ed. 70, indictment charging conspiracy to defraud in the use of forged vouchers supplied to Civil Service Commission sustained; Haas v. Henkel, 216 U.S. 462, 30 S.Ct. 249, 54 L.Ed. 569, alleged scheme to bribe official of Bureau of Statistics of Department of Agriculture to grant favors to defendants sufficiently charged a conspiracy to defraud United States;

Here there is no congressional mandate that the bridge must some day be free, or even that the bridge must be built. The principal purpose of the enabling act under which the Centennial Bridge was constructed was that of permitting the City to obstruct the navigable waters of the Mississippi River by the erection and maintenance of a bridge for vehicular traffic. The fostering of interstate commerce and the benefit to military and postal traffic are recited in justification of the desirability for obstruction of the navigable stream. In its zeal to punish offenders, the government ought not reach back into the hidden recesses of this piece of private legislation to find a basis for a federal indictment in the present circumstances.

If defendants have embezzled tolls collected from operation of the bridge, their offense is against the City of Rock Island and the State of Illinois. They may be punished by that State in accordance with its penal laws. It is neither necessary nor desirable to extend the interpretation

United States v. Keitel, 211 U.S. 370, 29 S.Ct. 123, 53 L.Ed. 230, and Hyde v. Shine, 199 U.S. 62, 25 S.Ct. 760, 50 L. Ed. 90, alleged scheme to obtain public lands of the United States by fraud and deception constitutes a conspiracy to defraud the United States; Wolf v. United States, 7 Cir., 283 F. 885, certiorari denied 260 U.S. 743, 43 S.Ct. 164, 67 L.Ed. 492, sustained indictment charging conspiracy to defraud the United States by a scheme to obstruct government inspection of war material manufactured by defendants under government contracts; United States v. Klein, 2 Cir., 247 F.2d 908, alleged use by defendants of a complex of 17 foreign corporations to obstruct the Treasury Department in the collection of income taxes charged a conspiracy to defraud the United States; Caywood v. United States, 9 Cir., 232 F. 2d 220, indictment charging conspiracy by defendants to divert and convert to their own use federal surplus property made available to defendants, or some of them, for distribution to eligible educational institutions was sufficient to charge an offense under the statute; Heald v. United States, 10 Cir., 175 F.2d 878, certiorari denied 338 U.S. 859, 70 S.Ct. 101, 94 L. Ed. 526, alleged scheme to secure unauthorized insured loans by submitting false and spurious contracts to the Veterans Administration constituted a fraud against the United States; Berenbeim v. United States, 10 Cir., 164 F.2d 679, certiorari denied 333 U.S. 827, 68 S.Ct. 454, 92 L.Ed. 1113, scheme for securing from Veterans Administration guarantees of premiums on life policies by submission of false reports to that agency constituted a fraud against the United States; Outlaw v. United States, 5 Cir., 81 F.2d 805, and Cendagarda v. United States, 10 Cir., 64 F.2d 182, allegation of conspiracy to obstruct justice in federal courts sufficiently charged a conspiracy to obstruct a valid function of the United States government; United States v. Goldsmith, 2 Cir., 68 F.2d 5, allegation that defendants issued false and spurious receipts which, obstensibly, were receipts of the Bureau of Internal Revenue as a part of a scheme to defraud private persons of money was sufficient to charge an offense under 18 U.S.C. § 72 which prohibits the use of false or counterfeit writings for the purpose of defrauding the United States; Wallenstein v. United States, 3 Cir., 25 F.2d 708, and United States v. Slater, D.C.E.D.Pa., 278 F. 266, alleged scheme to violate and defeat operation of the National Prohibition Act was sufficient to charge conspiracy to defraud the United States, on the theory that regulation of the liquor traffic was a valid governmental function under the Eighteenth Amendment; Fowler v. United States, 9 Cir., 273 F. 15, alleged scheme to steal commodities from shipments aboard cars moving on railroads then under the control of the United States Government was an invasion of a government property right and a fraud against the government; United States v. Stone, D.C., 135 F. 392, 393, scheme to obtain government approval of life preservers which did not meet statutory standards was a scheme to defraud the United States by obstructing a governmental function; Curley v. United States, 1 Cir., 130 F. 1, an alleged scheme to impersonate another person in appearances before civil service agency for Post Office Department employment was a conspiracy against the United States; United States v. Belisle, D.C.W.D.Wash., 107 F.Supp. 283, conspiracy to submit collusive bids to Post Office Department for the furnishing of vehicles for use at Vancouver Post Office; United States v. Terranova, D.C. N.D.Cal., 7 F.Supp. 989, use of false reports to evade the federal wage laws on a federal construction contract was a fraud against the United States.

of Section 371 to reach a realm which lacks any logical foundation in federal interest. It may be said that conspiracy is a nebulous offense but even nebulae must admit of some limitations. If the conspiracy statute is to be applied to cases of this nature, the application should be effected by congressional action, not by judicial legislation.

■ I am constrained to hold that the indictment does not charge an offense against the United States and the indictment is, therefore, dismissed.