## UNITED STATES v. SOUTHERN RY. CO.

(District Court, D. Tennessee. August 8, 1924.)

No. 173.

**Master and servant ⚖=>17—Railroad liable to penalty for each separate "use" of locomotive overdue for inspection.**

Under Boiler Inspection Act, § 2 (Comp. St. § 8631), as amended by Act March 4, 1915, c. 169 (Comp. St. § 8639a), and rules and regulations promulgated by Interstate Commerce Commission pursuant to section 5 (Comp. St. § 8634), requiring monthly inspections of locomotives, as conditions to their "use" each use of locomotive after time for inspection constitutes separate offense.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Use—Used.]

At Law. Action by the United States against the Southern Railway Company. Judgment for plaintiff.

See, also, 285 Fed. 766.

Geo. C. Taylor, U. S. Atty., of Knoxville, Tenn.

Cates, Smith, Tate & Long, of Knoxville, Tenn., for defendant.

HICKS, District Judge. The declaration in this case contains 11 counts, each count alleging a violation of 36 Statutes at Large, p. 913 (Comp. St. §§ 8630–8639), as amended by 38 Statutes at Large, p. 1192 (Comp. St. § 8639a), and the rules and regulations promulgated by the Interstate Commerce Commission in accordance with the provisions of said act. This act is popularly called the Boiler Inspection Act. The specific violations alleged in each count are that the defendant placed in service and use on its railroad a certain locomotive in interstate traffic, when the monthly inspections and tests of said locomotive and tender and other parts, as required by said act and said rules and regulations made pursuant thereto, had not been made by the defendant, and the monthly report of and concerning the inspection of said locomotive and tender and other parts had not been filed, as provided by said act. The defendant pleaded not guilty to this declaration and the various counts thereof, but, upon the first hearing of the case, the defendant admitted a violation in each instance, but insisted at that time that the violation occurred because of its inability to comply with the provisions of the act so far as relates to inspection, by reason of a lack of sufficient number of inspectors and other servants, due to the nation-wide railroad strike in existence at that time.

The result of that hearing was adverse to defendant, and judgment was rendered upon each count for the statutory penalty of $100, the case having been heard by the court without a jury. Before the judgment was entered upon the minutes, the defendant called attention to the fact that the second and third counts were for alleged violations as to the same engine, to wit, No. 1069; that the fourth and fifth counts were for alleged violations as to the same engine, to wit, No. 1055; that the sixth and seventh counts were for alleged violations as to the same engine, to wit, No. 841; that the eighth and ninth counts were for alleged violations as to the same engine, to wit, No. 4511; that the tenth and eleventh counts were for alleged violations as to the same engine, to wit, No. 464; and that each of these alleged violations were

for different uses of these engines after the failure to inspect monthly, as required by rules 21, 39, 45, 46, 153B, 51, and 159 of the Rules of the Interstate Commerce Commission.

There is incorporated herein a tabulation of the movement of each of these engines upon which a violation is predicated in each of the several counts of the declaration, to wit:

| Use in Moving Interstate Commerce. | | | | |
|---|---|---|---|---|
| Count. No. | Loco. No. | Point from Which Used. | Point to Which Used. | Date of Use. |
| 1 | 754 | Knoxville, Tenn. | Chattanooga, Tenn. | Aug. 29, 1922 |
| 2 | 1069 | " " | Fonde, Ky. | July 25, 1922 |
| 3 | 1069 | " " | " " | July 27, 1922 |
| 4 | 1055 | " " | Middlesboro, Ky. | Aug. 23, 1922 |
| 5 | 1055 | " " | " " | Aug. 25, 1922 |
| 6 | 841 | " " | Cleveland, Tenn. | July 26, 1922 |
| 7 | 841 | " " | Chattanooga, Tenn. | Aug. 25, 1922 |
| 8 | 4511 | Johnson City, " | Bull's Gap, Tenn. | Aug. 28, 1922 |
| 9 | 4511 | " " " | " " " | Aug. 30, 1922 |
| 10 | 464 | Knoxville, " | Vasper, " | Aug. 28, 1922 |
| 11 | 464 | " " | Jellico, " | Aug. 30, 1922 |

It appears to be true, as insisted upon by the defendant, that while there was only one use of locomotive No. 754, on which the first count in the declaration is predicated, yet there were two separate uses of engines No. 1069, 1055, 841, 4511, and 464, when they were overdue for the monthly inspection, and, while the defendant admits its liability for a penalty of $100 for the use of each of said engines when overdue for inspection, or a total liability of $500 on account of the use of these five, yet it insists that it is only liable for one use of each of said five engines after a failure to inspect, and not for each separate and distinct use.

The plaintiff, upon the other hand, insists that the defendant is liable for each separate use of these locomotives or engines while overdue for inspection, and the case, therefore, presents this simple question of law, to wit: Does the Boiler Inspection Act, as amended, and the rules made in pursuance thereof, make each use of a locomotive overdue for inspection a separate offense, for which a penalty attaches, or whether each use thereof thereafter is merely one continuing offense, for which only one penalty may be imposed?

Upon the question there is a paucity of judicial construction. I have only had one authority brought to my attention, to wit, the charge of Judge Farris to a jury in the Southeastern division of the Eastern district of Missouri, the gist of which, as reflected in the headnotes, appears to be that:

"6. Each use of locomotive or tender in interstate traffic when such locomotive or tender does not conform with the law and with such rules and regulations, or with any one of such rules and regulations, constitutes a separate offense."

But I am of opinion that upon principle the law is with the plaintiff. The caption of the act is as follows: "An act to promote the safety of employees and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their locomotives with safe and suitable boilers and appurtenances thereto." And it should therefore be construed so as "to promote the safety of employees." Hines v. Smith (C. C. A.) 275 Fed. 766; Johnson v. Southern Pacific Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; U. S. v. Kansas City Southern Railway Co., 202 Fed. 828, 121 C. C. A. 136.

Section 2 of the act provides that "it shall be unlawful * * * to use any locomotive engine * * * unless the boiler of said locomotive and appurtenances thereof are in proper condition and safe to operate in the service to which the same is put, that the same may be employed in the active service of such carrier in moving traffic without unnecessary peril to life or limb, and all boilers shall be inspected from time to time in accordance with the provisions of this Act, and be able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for." Section 5 provides for the promulgation of rules and regulations and inspections, and the rules and regulations material to the issue here are set forth in paragraph 2 of count 1 of the declaration. These rules must be considered as part of the statute. Haas v. Henkel, 216 U. S. 462, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112.

It is to be noticed that section 2 makes it unlawful to use a locomotive engine unless its boiler is in proper condition and safe to operate, and, of course, there must be some fixed standard by which is determined the question as to whether a boiler is "in proper condition and safe to operate," and this

standard must necessarily be: Have the rules and regulations been observed? If they have, the engine may be used; otherwise, not. In other words, if the engine has undergone its monthly inspection and its staybolts tested, as required by rule 21, and the spindles of its gauge cocks and water glass cocks removed and the cocks cleaned of scale and sediment at least once each month, as required by rule 39, and the boilers washed once each month, as required by rule 45, and the arch and water bar plugs removed when the boilers are washed, as required by rule 46, once each month, and the interior of the tank inspected and cleaned once each month, if necessary, as required by rule 153B, and the report of inspections filed, as required by rules 51 and 159, then the locomotive engine may be considered "in proper condition and safe to operate"; otherwise, not.

This is in consonance with the charge of Judge Farris in the case above indicated, and seems to be sound upon principle; and if this is a correct construction of the act, then there remains only one other question, to wit: What is meant by the term "use" in section 2? Is it meant that, by virtue of the defendant having violated the statute with reference to the monthly inspection of the engine, it thereby, by virtue of its said violation, is permitted to use the engine continuously until the next monthly inspection period? Or, to put it another way, does its violation of the inspection rules give it a vested right to continue the use of the engine until the next monthly inspection, upon the payment of only one penalty of $100, or should the term "use" be construed to mean each separate use of the engine after the violation as to inspection rules?

The plaintiff insists that each separate use under such circumstances is an offense; while the defendant insists that such a construction would logically result in the commission of a violation with each starting and stopping of the engine. Without stopping to refine upon the different shades of meaning that might be given to the word "use," I think it should be construed in the light of the situation with which we are dealing, and two things should be kept in mind: First, the object of the statute, to wit, the promotion of the safety of employees; and, second, the opportunity which the defendant had to comply with the statute which it admits it violated. The defendant, as does all well-regulated railroads, certainly had or should have had the means and facilities to have made the required inspections either at the beginning or close of each trip made by these engines. It is to be assumed that these facilities were at its command at its terminals, and it is nothing more than reasonable expectation that they should avail themselves thereof.

I am therefore of opinion that my first holding in this case was correct, and judgment will therefore be entered as indicated in the memorandum then filed against the defendant for the statutory penalty of $100 upon each count of the declaration, making a total recovery of $1,100.