*United States v. Liu*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of October, two thousand and twenty-two.

PRESENT:    Jon O. Newman,
            Guido Calabresi,
            Steven J. Menashi,
                *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

      *Appellee,*

  v.                                                            No. 22-1082

ZHONGSAN LIU, AKA Sealed Defendant 1,

      *Defendant-Appellant*.

_____

*For Appellee:*  ELINOR L. TARLOW, Assistant United States Attorney (Gillian S. Grossman and Hagan Scotten, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

*For Defendant-Appellant:*  JUSTIN S. WEDDLE, Weddle Law PLLC (Julia I. Catania and Brian Witthuhn, Weddle Law PLLC, and Valerie Y.C. Wong, Wong, Wong & Associates, P.C., *on the brief)*, New York, NY.

Appeal from a judgment of conviction of the United States District Court for the Southern District of New York (Caproni, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of conviction entered by the district court is **AFFIRMED**.

Defendant-Appellant Zhongsan Liu appeals from a judgment of conviction in which he was found guilty on one count of conspiracy (1) to defraud the United States in violation of 18 U.S.C. § 371 and (2) to commit visa fraud in violation of 18 U.S.C. § 1546(a). On May 13, 2022, following a jury trial, the United States District Court for the Southern District of New York entered a judgment of conviction, sentencing Liu to ten months' imprisonment and imposing a $100 mandatory assessment. We assume the parties' familiarity with the underlying facts and procedural history.

## I

From March 2017 to September 2019, Liu worked in the United States for the China Association for the International Exchange of Personnel ("CAIEP"). CAEIP is a part of the larger State Administration of Foreign Experts Affairs ("SAFEA"), an agency of the People's Republic of China ("PRC Government") that

conducts talent recruitment on behalf of the government. CAIEP operates branches in multiple countries outside of China, including the United States, where it has offices in Atlanta, Georgia; San Francisco, California; and Fort Lee, New Jersey ("CAIEP-NY"). Liu was employed as Chief Representative of CAIEP-NY until his arrest in 2019.

In 2017, CAIEP began to have difficulties obtaining work visas for personnel to staff its U.S. offices. According to a report it published in January 2018, CAIEP saw the staffing issue as threatening its continued operation. As a result, Liu and other PRC Government officials decided to seek J-1 visas for CAIEP personnel to enter the United States.

A J-1 visa may be issued to "a bona fide student, scholar, trainee, teacher, professor, research assistant, specialist, or leader in a field of specialized knowledge or skill … coming temporarily to the United States … for the purpose of teaching, instructing or lecturing, studying, observing, conducting research, consulting, demonstrating special skills, or receiving training." 8 U.S.C. § 1101(a)(15)(J). A foreign national may obtain a J-1 visa as a research scholar if he or she has a "primary purpose" of "conducting research, observing, or consulting in connection with a research project at research institutions." 22 C.F.R. § 62.4(f). The J-1 visa holder may not pursue outside employment—aside from "incidental," "occasional lectures or short-term consultations" approved by the program sponsor, 22 C.F.R. § 62.20(g)—and "is subject to termination [from the visa program] when he or she engages in unauthorized employment," 22 C.F.R. § 62.40(b); *see also* 22 C.F.R. § 62.16(b).

In early 2018, Liu attempted to procure a J-1 visa for an employee of the PRC Government named Sun Li by seeking an academic institution in the United States that would sponsor her as a research scholar. At the same time, Liu assisted another employee of the PRC Government, Liang Xiao, in concealing her employment with CAIEP-NY in order to maintain her J-1 visa. Liang had obtained a J-1 visa to serve as a research scholar at the University of Georgia-Athens ("UGA") studying "the administration of non-profits," App'x 746, despite plans to work as a CAIEP-NY representative in the New Jersey office. While UGA knew

3

that Liang had worked for the PRC Government in China when she applied to be a research scholar, it did not know that she planned to work at CAIEP-NY for the duration of her J-1 visa. Liu advised Liang on how to appear to be a full-time research scholar at UGA in order to avoid raising questions about her J-1 visa, and he also served as her supervisor at CAIEP-NY.

Liu and Liang were arrested in September 2019. On January 22, 2020, a superseding indictment charged Liu with one count of conspiracy (1) to defraud the United States in violation of 18 U.S.C. § 371 and (2) to commit visa fraud in violation of 18 U.S.C. § 1546(a). Following a week-long jury trial, Liu was convicted on March 22, 2022, and the district court entered judgment on May 13, 2022.

## II

Liu argues that (1) the government's evidence was legally insufficient to establish the charged conspiracy, (2) the government failed to prove any lawful government function was targeted, (3) the conviction violated Liu's rights to due process of law because the permissible activities of a bona fide research scholar on a J-1 visa are vague, and (4) venue was improperly laid in the Southern District of New York. We disagree and therefore affirm the judgment.

## A

A "defendant challenging the sufficiency of the evidence" for a jury verdict "bears a heavy burden." *United States v. Landesman*, 17 F.4th 298, 319 (2d Cir. 2021). "This is because of our exceedingly deferential standard of review," under which "we must analyze the evidence in the light most favorable to the prosecution" and credit "every inference that the jury may have drawn in the government's favor." *United States v. Hassan*, 578 F.3d 108, 126 (2d Cir. 2008) (internal quotation marks omitted). "We will not set aside a conviction as long as '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" *United States v. Percoco*, 13 F.4th 158, 169 (2d Cir. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)), because we remain mindful that "it is the task of the jury,

4

not the court, to choose among competing inferences that can be drawn from the evidence," *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003).

Liu contends that the evidence indicates that he encouraged Liang to comply with U.S. immigration law, that he did not make false statements with respect to Sun's hypothetical visa, and that he lacked the intent to defraud the United States. We conclude that Liu has not carried the heavy burden of showing that no rational jury could have returned a guilty verdict.

The jury saw evidence that Liang was working as a representative of CAIEP-NY under Liu's supervision and that Liang had moved to New Jersey in order to perform that role, indicating that her "primary purpose" in the United States was to work at CAIEP-NY rather than to serve as a research scholar at UGA. 22 C.F.R. § 62.4(f). Liu instructed Liang on how to create the perception that she was a Georgia resident before moving to New Jersey so that she could "get down to [her] own business." App'x 478. A CAIEP-NY bank account listed Liang as a "manager." *Id.* at 404. Liang held herself out as an employee of CAIEP-NY in outside correspondence, and she addressed Liu as an employee would address a supervisor. Liang accompanied Liu to talent recruitment events on behalf of CAIEP-NY, assisted Liu in budgeting for CAIEP-NY, reviewed a CAIEP-NY work report for submission to SAFEA, and performed administrative tasks on behalf of CAIEP-NY. Text communications indicated that Liu recommended Liang be given "an outstanding grade in her 2018 performance review." *Id.* at 862.

The jury learned that Liang never sought authorization from UGA for her outside employment, and her faculty sponsor at UGA was "taken aback" when he learned that Liang was an employee of CAIEP-NY in New Jersey. *Id.* at 376. Given this evidence, a rational trier of fact could find that Liu conspired to defraud the United States and to commit visa fraud by concealing the violation of the terms of Liang's J-1 visa.

The jury also could find that Liu conspired to defraud the United States and to commit visa fraud based on his efforts to procure a J-1 visa for Sun. Conspiracy does not require the achievement of the objective but only an "overt act … in

furtherance of the conspiracy." *United States v. Reyes*, 302 F.3d 48, 53 (2d Cir. 2002) (internal quotation marks omitted). After he was instructed by China-based CAIEP employee Chen Shufeng to "do Sun Li's application for a visa to work in New York and other relevant preparatory work,"App'x 196, Liu acted to secure Sun a J-1 visa. The evidence showed that Liu contacted several people in search of an institution willing to sponsor Sun. Liu contacted Wang Jianfeng, the "head of training programs" at Rutgers University; another professor at Rutgers University; Baifeng Sun Cadieux, the president of the Confucius Institute at the University of Massachusetts-Boston; an individual named "Mark" affiliated with the University of Baltimore; John Wu, an associate with connections to George Washington University and George Mason University; another associate with connections to Purdue University and Kaplan University; and Ji Shuren of the U.S.-China Business Consulting Center, who then contacted another individual to send Sun's information to "senior officers" at "New Haven University," App'x 565. After failing to secure a sponsor through those efforts, Liu communicated to Wu that he was concerned that CAIEP-NY might be forced to close if it could not bring more personnel to the United States. Based on the evidence introduced at trial, a rational trier of fact could find that Liu intended to secure a J-1 visa for Sun not for the purpose of supporting her activities as a bona fide research scholar but to employ her at CAIEP-NY in violation of the terms of the visa.

**B**

Liu argues that the district court erred in denying his motion to dismiss the indictment because a conspiracy to defraud the United States cannot be established unless the conspiracy targeted a government function expressly defined by law or regulation. Liu claims that the government sought to prove that the alleged conspiracy targeted federal agencies' "rel[iance] on truthful and accurate information" provided by J-1 visa holders. Appellant's Br. 72 (internal quotation marks omitted). Because no law or regulation codifies the government's function of relying on such information, he suggests, that function cannot be the target of a conspiracy under 18 U.S.C. § 371.

In considering the denial of a motion to dismiss an indictment, we "review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Alarcon Sanchez*, 972 F.3d 156, 162 (2d Cir. 2020). The district court concluded that "as long as an indictment 'identifies the lawful government functions at issue with some specificity,' it can survive a motion to dismiss" and that the functions "can be as seemingly general as the administration of agency initiatives." *United States v. Liu*, No. 19-CR-804, 2022 WL 443846, at *3 (S.D.N.Y. Feb. 14, 2022) (alteration omitted) (quoting *United States v. Concord Mgmt. & Consulting LLC*, 347 F. Supp. 3d 38, 47 (D.D.C. 2018)). The district court said that the alleged conspiracy in this case targeted the "administration of the underlying visa program" and that it was "common sense" that such a function would be "clearly within the lawful functions of the State Department and the Department of Homeland Security." *Id.* We agree with the district court.

The conspiracy in this case involved the attempt to secure J-1 visas for persons who did not qualify as "bona fide" research scholars and therefore were ineligible for such visas. 8 U.S.C. § 1101(a)(15)(J). That conspiracy targeted the lawful administration of the J-1 visa program. The requirements of that program are defined in statutes and regulations, and the responsibility for administering the program falls on the State and Homeland Security Departments. *See, e.g.*, 22 C.F.R. § 62.2 (noting that the "Exchange Visitor Program" is an "international exchange program administered by the Department of State to implement the [Mutual Educational and Cultural Exchange] Act by means of educational and cultural exchange programs").

Liu contends that a § 371 conspiracy cannot exist unless the government is prevented from executing a specific duty that some law or regulation specifically requires it to do. He relies on language from the Supreme Court's decision in *Haas v. Henkel*, 216 U.S. 462 (1910), which held that defendants had conspired to defraud the United States when they sought information from a statistician at the Department of Agriculture concerning official crop reports before publication. Assuming "that this statistical side of the Department of Agriculture is the exercise of a function within the purview of the Constitution," the Court said, "it must

7

follow that any conspiracy which is calculated to obstruct or impair its efficiency and destroy the value of its operations and reports as fair, impartial, and reasonably accurate, would be to defraud the United States by depriving it of its lawful right and duty of promulgating or diffusing the information so officially acquired in the way and at the time required by law or departmental regulation." *Id.* at 479-80.

Liu suggests that a § 371 defendant must prevent the government from performing an action "required by law or departmental regulation" that is more specific than the State Department's administration of the exchange visitor program or the Department of Homeland Security's enforcement of the immigration laws. We disagree. "A conspiracy to defraud under section 371 embraces 'any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government.'" *United States v. Ballistrea*, 101 F.3d 827, 831 (2d Cir. 1996) (quoting *Dennis v. United States*, 384 U.S. 855, 861 (1966)). Maintaining a visa program in which visa holders meet the program requirements is a "lawful function of the government" that the evidence showed Liu aimed to obstruct. *Id.* at 832.

## C

Liu argues that the lack of "clear standards" for J-1 visa holders means that he could not possibly have satisfied the *mens rea* requirement to conspire to defraud the United States. Appellant's Br. 75; *see Reyes*, 302 F.3d at 53. We again disagree.

A J-1 visa holder must be "a bona fide student, scholar, trainee, teacher, professor, research assistant, specialist, or leader in a field of specialized knowledge or skill … coming temporarily to the United States … for the purpose of teaching, instructing or lecturing, studying, observing, conducting research, consulting, demonstrating special skills, or receiving training." 8 U.S.C. § 1101(a)(15)(J). Regulations specify that a research scholar on a J-1 visa must be "[a] foreign national whose *primary purpose* is conducting research, observing, or consulting in connection with a research project at research institutions, corporate research facilities, museums, libraries, post-secondary accredited academic

institutions, or similar types of institutions." 22 C.F.R. § 62.4(f) (emphasis added). A "research scholar also may teach or lecture where authorized by the sponsor." *Id.* But any "lectures and consultations must be incidental to the exchange visitor's primary program activities," must be "directly related to the objectives of the exchange visitor's program," must be remunerated only "as an independent contractor," and must be "documented" in the Student and Exchange Visitor Information System, a database that monitors exchange visitors, among other requirements. 22 C.F.R. § 62.20(g). Any research scholar "who engages in unauthorized employment shall be deemed to be in violation of his or her program status and is subject to termination as a participant in an exchange visitor program." 22 C.F.R. § 62.16(b). Indeed, an "exchange visitor's participation in the Exchange Visitor Program is subject to termination when he or she engages in unauthorized employment. Upon establishing such violation, the Department of State shall terminate the exchange visitor's participation in the Exchange Visitor Program." 22 C.F.R. § 62.40(b).

These requirements clearly prohibit the outside employment that Liu facilitated for Liang and contemplated for Sun.

## D

"[T]he government bears the burden of proving venue," but "[b]ecause venue is not an element of a crime, the government need establish it only by a preponderance of the evidence." *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2007).

Venue lies "in a district where the offense was committed." Fed. R. Crim. P. 18. "For an offense deemed to be 'continuing,' venue may be proper in more than one location." *United States v. Rutigliano*, 790 F.3d 389, 395 (2d Cir. 2015). "A conspiracy is a continuing offense in which 'venue is proper in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators. The defendant need not have been present in the district, as long as an overt act in furtherance of the conspiracy occurred there.'" *Id.* at 395-96 (quoting *United States v. Geibel*, 369 F.3d 682, 696 (2d Cir. 2004)).

Liu objects that "[t]he only basis for venue is that on February 6, 2018, Liu passed through the district for a few miles while driving from New Jersey to Boston, where he held a meeting with a colleague that included a discussion of a J-1 sponsorship for Sun." Appellant's Br. 79. That overt act, however, furthered the conspiracy in this case. We have held that "venue for a conspiracy may be laid in a district through which conspirators *passed* in order to commit the underlying offense." *Tzolov*, 642 F.3d at 320 (emphasis added). That happened here.

We will look for additional "substantial contacts" when "the defendant argues that his prosecution in the contested district will result in a hardship to him, prejudice him, or undermine the fairness of his trial." *Rutigliano*, 790 F.3d at 399 (quoting *United States v. Coplan*, 703 F.3d 46, 80 (2d Cir. 2012)). Liu has not made such an argument, and the record reveals no basis for one. We conclude that the venue was proper.

\* \* \*

We have considered Liu's remaining arguments, which we conclude are without merit. We AFFIRM the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10